WACHOVIA BANK v. HARBINGER CAPITAL PARTNERS MASTER FUND 1, LTD.

[201 N.C. App. 507 (2009)]

With respect to the availability of defendants' witness, Steven Kenney, defendants cite to no evidence in the record supporting their assertions. We have found none. The record reveals that Mr. Kenney was deposed, and he also submitted an affidavit on defendants' behalf. We, therefore, affirm the trial court's dismissal of defendants' laches defense.

Affirmed.

Judges WYNN and CALABRIA concur.

---

WACHOVIA BANK, NATIONAL ASSOCIATION and WACHOVIA CAPITAL MARKETS, LLC, Plaintiffs v. HARBINGER CAPITAL PARTNERS MASTER FUND I, LTD., d/b/a HARBINGER CAPITAL PARTNERS MASTER FUND 1, d/b/a HARBINGER CAPITAL PARTNERS MASTER FUND I, AURELIUS CAPITAL MASTER, LTD., AURELIUS CAPITAL PARTNERS, LP, LATIGO MASTER FUND, LTD., HARBINGER CAPITAL PARTNERS OFFSHORE MANAGER, L.L.C., AURELIUS CAPITAL MANAGEMENT, LP, AURELIUS CAPITAL GP, LLC, LATIGO PARTNERS, L.P., SCHULTZE MASTER FUND, LTD., UBS WILLOW FUND, L.L.C., ARROW DISTRESSED SECURITIES FUND, and BOND STREET CAPITAL LLC, Defendants

No. COA08-629

(Filed 22 December 2009)

**1. Injunctions— preliminary—modification—standard of review**

Where a modification of a preliminary injunction dissolved certain aspects of the injunction and maintained others, the standard of review was abuse of discretion rather than *de novo*.

**2. Injunctions— first judge recused—modification by second judge**

A second judge did not err by modifying a preliminary injunction where the first judge recused himself after entry of the injunction and could not have revisited the ruling. The second judge stepped into the shoes of the first and could, in his discretion, rule on the injunction without a change of circumstances. Moreover, a comprehensive New York action involved a change of circumstances sufficient to support modification.

WACHOVIA BANK v. HARBINGER CAPITAL PARTNERS MASTER FUND 1, LTD.

[201 N.C. App. 507 (2009)]

**3. Trials— stay—action in another jurisdiction—within the discretion of the court**

The entry of an order staying an action so that it can be tried in another jurisdiction was within the discretion of the trial judge. The trial judge did not abuse his discretion by staying a North Carolina action where he thoroughly identified and analyzed the appropriate factors and reached the reasonable conclusion that staying the North Carolina action was a just result in light of a more comprehensive New York action.

Appeal by plaintiffs from order entered 14 March 2008 by Judge Albert Diaz in Mecklenburg County Superior Court. Heard in the Court of Appeals 13 January 2009.

*Robinson, Bradshaw & Hinson, P.A., by Martin L. Brackett, Jr., Robert W. Fuller, and Katherine G. Maynard, for plaintiffs-appellants.*

*Rayburn Cooper & Durham, P.A., by C. Richard Rayburn, Jr., James B. Gatehouse, and Ross R. Fulton; Quinn Emanuel Urquhart Oliver & Hedges, LLP, by Michael B. Carlinsky, Robert S. Loigman, and Adam Wolfson, pro hac vice, New York, New York, for defendants-appellees.*

HUNTER, Robert C., Judge.

On 14 March 2007, plaintiffs Wachovia Bank, National Association ("Wachovia Bank") and Wachovia Capital Markets, LLC ("WCM") (collectively, the "Wachovia Plaintiffs") filed a complaint in Mecklenburg County Superior Court against eight hedge funds: (1) Harbinger Capital Partners Master Fund I, Ltd.; (2) Aurelius Capital Master, Ltd.; (3) Aurelius Capital Partners, LP; (4) Taconic Opportunity Fund, L.P.; (5) Schultze Master Fund, Ltd.; (6) UBS Willow Fund, L.L.C.; (7) Arrow Distressed Securities Fund; and (8) Latigo Master Fund, Ltd. (collectively, the "Fund Defendants") and against six of the Fund Defendants' managing agents: (1) Harbinger Capital Partners Offshore Manager, L.L.C.; (2) Aurelius Capital GP, LLC; (3) Aurelius Capital Management, LP; (4) Taconic Capital Management, LLC; (5) Bond Street Capital LLC; and (6) Latigo Partners, L.P. (collectively the "Agent Defendants").[1] In the complaint, the Wachovia

_____

1. Defendants Taconic Opportunity Fund, L.P. and Taconic Capital Management, LLC, settled with the Wachovia Plaintiffs, are no longer parties in the instant case, and are not included in the respective categories of Fund Defendants or Agent Defendants. We refer to both the Fund Defendants and the Agent Defendants collectively as "Defendants."

IN THE COURT OF APPEALS    509

WACHOVIA BANK v. HARBINGER CAPITAL PARTNERS MASTER FUND 1, LTD.

[201 N.C. App. 507 (2009)]

Plaintiffs asserted claims for: (1) champerty and maintenance, arguing that Defendants had attempted to purchase and were intent on asserting over $100 million dollars in tort claims against the Wachovia Plaintiffs; (2) unfair and deceptive trade practices based on Defendants' purported illegal trafficking in tort claims; and (3) indemnity due to the Fund Defendants' purported refusal to make indemnity payments owed to Wachovia Bank. In addition, the Wachovia Plaintiffs sought a declaratory judgment that the Fund Defendants could not assert the tort claims that they had purportedly purchased. The Wachovia Plaintiffs appeal from an order entered 14 March 2008 by Superior Court Judge Albert Diaz, which: (1) modified a prior preliminary injunction and permitted the Fund Defendants to assert state law tort claims against WCM in the United States District Court for the Southern District of New York; and (2) stayed the Wachovia Plaintiffs' North Carolina action. After careful review, we affirm.

## I. Background

Wachovia Bank is a national banking association, with its principal place of business in Mecklenburg County, North Carolina. WCM is a Delaware limited liability company and an affiliate of Wachovia Bank, with Mecklenburg County also being its principal place of business. Sometime around 1 September 2006, pursuant to an "Amended and Restated Credit Agreement" ("Credit Agreement"), Wachovia Bank arranged and underwrote approximately $285 Million dollars in loans for Le-Nature's, Inc. ("Le-Nature's"), a Pennsylvania entity, which at that time was in the business of developing and marketing bottled water and other noncarbonated beverages. Wachovia Bank funded a portion of the Credit Agreement directly and created a syndicate of lenders to fund the balance of the loan ("Credit Facility"). WCM was not a party to the Credit Facility but "served as Lead Arranger and Sole Bookrunner for the transaction." WCM transferred or "syndicated" interests in the Credit Facility to investors pursuant to Section 9.6(c) of the Credit Agreement and the Commitment Transfer Supplement ("Supplement"), which was authorized by Section 9.6(c) of the Credit Agreement.

A secondary market exists for interests in syndicated loans. Some of the investors who obtained an interest in the Credit Facility directly from the Wachovia Plaintiffs ("Original Lenders") further assigned their interests on the secondary market to other investors ("Purchasing Lenders") pursuant to the Supplement. Each investor that became a member of the Credit Facility through this process,

WACHOVIA BANK v. HARBINGER CAPITAL PARTNERS MASTER FUND 1, LTD.

[201 N.C. App. 507 (2009)]

whether it was an Original Lender or a Purchasing Lender, became a " 'Lender' under and within the meaning of the Credit Agreement."

Both the Credit Agreement and the Supplement explicitly state that North Carolina law governs. "[T]o the extent permitted . . . under applicable law," the Supplement also provides for the assignment of:

> all claims, suits, causes of action and any other right of the Assignor (in its capacity as a Lender) against any Person, whether known or unknown, arising under or in connection with the Credit Agreement, any other documents or instruments delivered pursuant thereto or the loan transactions governed thereby or in any way based on or related to any of the foregoing, including, but not limited to, contract claims, *tort claims*, malpractice claims, statutory claims and all other claims at law or in equity related to the rights and obligations sold and assigned . . . .

(Emphasis added.)

On 1 November 2006, an involuntary bankruptcy petition was filed against Le-Nature's after it was discovered that Le-Nature's had engaged in massive fraud and provided materially misleading financial information to investors. Following the bankruptcy filing and revelation of Le-Nature's actions, numerous members of the Credit Facility sold some or all of their Credit Facility interests on the secondary market to other investors, including the Fund Defendants here. In other words, the Fund Defendants are investors who obtained their interests in the Credit Facility on the secondary market subsequent to the revelation that Le-Nature's had engaged in fraud and Le-Nature's being forced into bankruptcy. These transfers were also effectuated through the Supplement, which states that North Carolina law controls. In addition to utilizing the Supplement to effectuate these transfers, however, the Fund Defendants entered into separate agreements with their respective assignors. Neither Wachovia Bank nor WCM were parties to these separate agreements. These agreements: (1) provide for the assignment of certain third party tort claims and causes of action to the extent permitted by law; (2) state that New York law governs; and (3) "purport to override any contrary terms of the Supplements."[2]

---

2. The Fund Defendants and Agent Defendants assert that these agreements were based on the standard forms created by the Loan Syndications and Trading Association ("LSTA"). In support, they offered an affidavit from Elliot Ganz, General Counsel for the LSTA. According to Mr. Ganz, in 2006, approximately $40 Billion in distressed debt—such as Le-Nature's debt—was traded in the United States, and, since 1995, the

WACHOVIA BANK v. HARBINGER CAPITAL PARTNERS MASTER FUND 1, LTD.

[201 N.C. App. 507 (2009)]

In addition to filing their complaint on 14 March 2007, the Wachovia Plaintiffs moved for a temporary restraining order against Defendants. Superior Court Judge Robert Bell entered a "Temporary Restraining Order and Notice of Hearing on Preliminary Injunction Motion," which, among other things, enjoined Defendants from

> asserting, filing, prosecuting, attempting to assign or re-assign, or otherwise pursuing any Personal Tort Claims against [the Wachovia] Plaintiffs or any of their Agents (or any of the [Wachovia] Plaintiffs' direct or indirect parent or subsidiary entities, or any Agents of such entities) that arise from or relate in any respect to credit extended by any entity to Le-Nature's, Inc.

Judge Bell further specified that:

> The Personal Tort Claims . . . include but are not limited to each and every [one] of the following statutory or common law claims or causes of action, whether under the law of North Carolina or of any other state: (i) claims for fraudulent and negligent omissions or misrepresentations, or both, (ii) claims alleging constructive fraud, (iii) negligence claims, (iv) breach of fiduciary duty claims, (v) tortious interference claims, (vi) unfair trade practice claims, (vii) racketeering claims, (viii) conspiracy with respect to or to commit any of the aforelisted claims, or to commit any other wrongful act or omission, and (ix) aiding or abetting with respect to or to commit any of the aforelisted claims, or to commit any other wrongful act or omission.

On 29 March 2007, Superior Court Judge Robert C. Ervin heard the Wachovia Plaintiffs' Motion for Preliminary Injunction, and on 12 April 2007, entered an order granting a preliminary injunction. In the decretal portion of his order, Judge Ervin ordered:

> 1. Except as expressly permitted in paragraphs 3 and 4 below, the Fund Defendants and all of their officers, agents, ser-

---

250-member LSTA has been devoted to developing a fair, efficient, and liquid market for distressed loans. "Wachovia Bank . . . is a full member of the LSTA and is represented on the LSTA Board . . . ." Wachovia Bank is also a member of the LSTA's Trade Practices and Forms Committee, which is charged with the "principal responsibility for the drafting and revision of the LSTA's standard forms[,]" and Wachovia is represented in the "various [LSTA] working groups" that deal with "the drafting of forms specific to the trading of distressed debt." The LSTA Standard Terms and Conditions provide that sales of interests in distressed credit facilities include all of the seller's rights to assert legal claims against third-parties related to the debt and require parties to LSTA Purchase Agreements to submit any claims arising out of debt transfers to a New York court applying New York law.

WACHOVIA BANK v. HARBINGER CAPITAL PARTNERS MASTER FUND 1, LTD.

[201 N.C. App. 507 (2009)]

vants, employees, and attorneys, and all persons and entities acting in active concert or participation with them who receive actual notice in any manner of this Order by personal service or otherwise (the "Enjoined Persons and Entities"), are hereby enjoined from asserting, filing, prosecuting, attempting to assign or transfer in any other manner, or otherwise pursuing any Personal Tort Claims as defined in paragraph 2 below against the [Wachovia] Plaintiffs or any Wachovia Employees that were assigned to any one or more Fund Defendant(s) arising from or relating in any respect to credit extended to Le-Nature's, Inc. and its affiliates pursuant to the Credit Agreement in any court other than this Court against Wachovia [Bank], WCM, and/or their past or present agents, employees, officers, directors, or other[s] acting on their behalf whose actions Wachovia [Bank] or WCM would be responsible under the doctrine of respondeat superior or under other similar legal principles (all of which agents, employees, officers, directors and others are hereby jointly referred to as "Wachovia Employees") to the extent arising from any acts or omissions of Wachovia [Bank], WCM or any Wachovia Employees with respect to Plaintiffs' roles relating to the Credit Agreement.

2. The Enjoined Persons and Entities are prohibited from asserting, as set forth in paragraph one above, the following statutory or common law causes of action, *whether arising under the law of North Carolina or of any other state* (collectively "Personal Tort Claims"): (a) fraudulent and negligent omissions or misrepresentations, or both, (b) constructive fraud, (c) negligence, (d) breach of fiduciary duty, (e) tortious interference, (f) unfair trade practices, (g) racketeering, (h) conspiracy to commit any of the aforelisted causes of action, (i) aiding or abetting the commission of any of the aforelisted causes of action, and (j) any other causes of action found in whole or in part upon allegedly tortious conduct.

3. The Fund Defendants may, but are not required to, assert in this action, any assigned Personal Tort Claims against Plaintiffs and/or Wachovia Employees. Further, notwithstanding anything to the contrary set forth in the immediately preceding paragraphs of this Order, the Enjoined Persons and Entities are not enjoined in any respect from bringing or asserting in any court or assigning any contract claims against [the Wachovia] Plaintiffs and/or Wachovia Employees.

WACHOVIA BANK v. HARBINGER CAPITAL PARTNERS MASTER FUND 1, LTD.

[201 N.C. App. 507 (2009)]

4. The Enjoined Persons and Entities are not enjoined from assigning, and [the Wachovia] Plaintiffs will not suffer irreparable harm should Defendants in the future assign, any Personal Tort Claims against [the Wachovia] Plaintiffs and/or Wachovia Employees that were assigned to any Defendants arising from or relating in any respect to credit extended to Le-Nature's, Inc. pursuant to the Credit Agreement, provided that if the assignee is not a Fund Defendant as of the date of this Order, such assignee (and each such subsequent assignee, if there are multiple future assignments) must be provided by the assignor with a copy of this Order and must execute and deliver to counsel for the [Wachovia] Plaintiffs a  Consent and Agreement, in the form attached hereto, and must agree (a) to consent to be joined as a defendant in this action and to this Court exercising jurisdiction over the assignee in this Court for purposes of this Preliminary Injunction and the litigation of the [Wachovia] Plaintiff[s'] claims concerning the validity and legality of the assignment of Personal Tort Claims and (b) to be fully bound by and comply in all respects with this Preliminary Injunction as if the assignee were currently named as a Fund Defendant herein, unless and until this Preliminary Injunction is lifted; and (c) to refrain from further assignment or attempted assignment of such Personal Tort Claims unless each further assignee executes and delivers the Consent and Agreement form attached hereto, and agrees to the conditions and restrictions in this paragraph.

(Emphasis added.) In this order, Judge Ervin also deferred ruling on Defendants' "Motion to Dismiss for lack of personal jurisdiction . . . pending expedited jurisdictional discovery and supplementation of the record."

On 30 March 2007, prior to the entry of the order granting the preliminary injunction, Judge Ervin wrote a letter to the parties' respective counsel informing them that his wife had recently applied for employment with the Wachovia Foundation and instructed them to "[l]et [him] know if this create[d] a problem or if [they] need[ed] additional information about this." On 2 April 2007, counsel for the Wachovia Plaintiffs informed Judge Ervin that this did not create a concern for the Wachovia Plaintiffs and that they were nearly finished preparing "an Order memorializing" Judge Ervin's decision regarding the preliminary injunction. On 3 April 2007, counsel for Defendants wrote to Senior Resident Superior Court Judge Robert P. Johnston, requesting that the case be designated as an " 'exceptional'

WACHOVIA BANK v. HARBINGER CAPITAL PARTNERS MASTER FUND 1, LTD.

[201 N.C. App. 507 (2009)]

case" pursuant to "Rule 2.1 of the General Rules of Practice for the Superior and District Courts" and that the case be assigned to Judge Ervin. On 4 April 2007, counsel for the Wachovia Plaintiffs requested that the case "be assigned to the Business Court after Judge Ervin . . . entered his Order granting the Preliminary Injunction and disposed of the Personal Jurisdiction motion (with respect to which he allowed discovery, now in progress)" because Judge Ervin owned Wachovia stock and his wife had recently unsuccessfully applied for a job with the Wachovia Foundation. Counsel for the Wachovia Plaintiffs noted that even though the current parties had waived these potential conflicts, there was a possibility that additional defendants would be added to the case, and there was no guarantee that these new parties would waive the conflict. Consequently, counsel for the Wachovia Plaintiffs suggested that the case be assigned to Special Superior Court Judge Albert Diaz after the entry of "the Order granting the Preliminary Injunction . . . ." On 14 May 2007, Supreme Court Chief Justice Sarah Parker entered an order designating this action as "*exceptional*" and assigned the case to Judge Diaz.

On 17 September 2007, the Fund Defendants and 10 of the Original Lenders filed a complaint in the United States District Court for the Southern District of New York (the "New York Action") against: (1) WCM (but not against Wachovia Bank); (2) BDO Seidman, LLP, ("BDO"), the outside auditor for Le-Nature's from 2003 through 2006; (3) Gregory J. Podlucky ("Podlucky"), Le-Nature's majority and controlling shareholder and its Chairman and Chief Executive Officer; and (4) Robert Lynn ("Lynn"), an Executive Vice President of Le-Nature's. This complaint asserted claims by all of the plaintiffs in that action against: (1) Podlucky and Lynn for violating the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) all of the defendants for conspiracy to violate RICO; and (3) BDO for fraud, aiding and abetting fraud, and negligent misrepresentation. The Original Lenders also asserted state law claims against WCM for, among other things, fraud, aiding and abetting fraud, and negligent misrepresentation.

On 18 September 2007, the Defendants filed a "Motion to Dissolve Preliminary Injunction and Stay Action[.]" The Wachovia Plaintiffs opposed the Defendants' motion and moved to hold the Fund Defendants in contempt for violating the preliminary injunction by asserting the purportedly assigned federal RICO claims.

In an order entered 14 March 2008, Judge Diaz modified Judge Ervin's preliminary injunction to allow the Fund Defendants "to at-

WACHOVIA BANK v. HARBINGER CAPITAL PARTNERS MASTER FUND 1, LTD.

[201 N.C. App. 507 (2009)]

tempt to assert in the New York Action all claims arising from their [respective] acquisition of interests in the Credit Facility." Judge Diaz further declared that the "portion of Judge Ervin's preliminary injunction order barring Defendants from further assignment of Personal Tort Claims to entities not a party to this litigation, except on the express terms set forth in [Judge Ervin's] order" was to "remain in full force and effect." Judge Diaz also entered a stay of this action; however, he concluded that if "WCM prevail[ed] on its motion to dismiss in the New York Action, [he] would obviously revisit [the] stay order." Judge Diaz deferred ruling on the Wachovia Plaintiffs' contempt motion and Defendants' motion to dismiss for lack of personal jurisdiction.

Both WCM and BDO moved to dismiss the New York Action. In a "Memorandum Decision" filed 26 August 2008, United States District Court Judge Denny Chin dismissed the federal RICO claims, determining that the Plaintiffs in that case "lack[ed] statutory standing to sue under RICO [as] their damages ha[d] yet to become 'clear and definite' and [were] thus unripe."[3] Noting that jurisdiction as to the state law claims against WCM and BDO was based on supplemental jurisdiction and not diversity jurisdiction, Judge Chin dismissed the state law claims as well. The Plaintiffs in the New York Action appealed, and, on 9 October 2009, the Second Circuit affirmed the dismissal.[4]

## II. Analysis

On appeal, the Wachovia Plainitffs assert that Judge Diaz erred by modifying the preliminary injunction and staying their North Carolina action. We disagree with both contentions.

### A. Interlocutory Appeal: Preliminary Injunction

The parties agree that the entry of the stay is immediately appealable pursuant to N.C. Gen. Stat. § 1-75.12(c) (2007), which provides in pertinent part: "Whenever a motion for a stay . . . is granted, any nonmoving party shall have the right of immediate appeal. Whenever such a motion is denied, the movant may seek review by means of a writ of certiorari . . . ." The parties disagree, however, as to whether the modification of the preliminary injunction is immediately appeal-

---

3. *See Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC,* No. 07 Civ. 8139(DC), 2008 U.S. Dist. LEXIS 67462 *12, 2008 WL 3925175 *4 (S.D.N.Y. 2008) (memorandum decision).

4. *See Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC,* No. 08-4692-cv, 2009 U.S. App. LEXIS 21657, 2009 WL 3161357 (2d Cir. 2009) (slip opinion).

able. We need not address this issue as we grant the Wachovia Plaintiffs' petition for writ of certiorari pursuant to Rule 21(a)(1) of the Rules of Appellate Procedure to address whether Judge Diaz erred in modifying the preliminary injunction. *See DaimlerChrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 577, 561 S.E.2d 276, 281 (2002) ("[W]e need not determine whether the preliminary injunction affects a substantial right . . . because we have elected to grant Defendants' petition for writ of certiorari pursuant to [Rule] 21(a)(1) to address the merits of this appeal."), *disc. review denied*, 356 N.C. 668, 577 S.E.2d 113 (2003).

### B. Modification of the Preliminary Injunction

[1] As a preliminary matter, the Wachovia Plaintiffs argue that the standard of appellate review applicable to the trial court's modification of the preliminary injunction is de novo. We have not found any North Carolina caselaw clearly articulating the proper standard of review for a trial court's modification of a preliminary injunction. In *Barr-Mullin, Inc. v. Browning*, 108 N.C. App. 590, 597-98, 424 S.E.2d 226, 231 (1993), however, the defendants asserted on appeal that the trial court erred in entering a preliminary injunction and "in denying their Motion for Reconsideration and Motion to Dissolve Preliminary Injunction." This Court "note[d]" that appellate review of the initial grant of the preliminary injunction was "essentially *de novo*." *Id.* at 594, 424 S.E.2d at 228. In contrast, the Court held that "a refusal to dissolve a temporary injunction is addressed to the discretion of the trial court and can only be set aside if there is an abuse of discretion." *Id.* at 598, 424 S.E.2d at 231. Here, Judge Diaz's modification of the preliminary injunction dissolves certain aspects of Judge Ervin's preliminary injunction order and maintains others; consequently, we conclude that the abuse of discretion standard applies in this case.

[2] Turning to the Wachovia Plaintiffs' argument, they do not assert that if Judge Ervin had remained on this case, he would not have had the discretion to revisit his preliminary injunction order and modify it. Rather, they contend that Judge Diaz, after the case was reassigned to him, erred in modifying the preliminary injunction because he overruled another superior court judge, something he could not do "absent a finding of changed factual circumstances." They further contend that Judge Diaz's order "identifies no change in factual circumstance that could warrant modification of the Injunction."

WACHOVIA BANK v. HARBINGER CAPITAL PARTNERS MASTER FUND 1, LTD.

[201 N.C. App. 507 (2009)]

Our Supreme Court has recognized that

> it is well established in our jurisprudence that no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action. When the above-noted situation arises, the second judge may reconsider the order of the first judge only in the limited situation where the party seeking to alter that prior ruling makes a sufficient showing of a substantial change in circumstances during the interim which presently warrants a different or new disposition of the matter.

*State v. Woolridge*, 357 N.C. 544, 549-50, 592 S.E.2d 191, 194 (2003) (internal citations and quotation marks omitted); *accord Calloway v. Motor Co.*, 281 N.C. 496, 505, 189 S.E.2d 484, 490 (1972) (concluding modification requires showing "intervention of new facts which bear upon the propriety" of the previous order). "The burden of showing the change in circumstances is on the party seeking a modification or reversal of an order previously entered by another judge." *First Fin. Ins. Co. v. Commercial Coverage, Inc.*, 154 N.C. App. 504, 507, 572 S.E.2d 259, 262 (2002).

Here, Judge Ervin's recusal from this case subsequent to the entry of the preliminary injunction order in the Wachovia Plaintiffs' favor created a situation in which Judge Ervin could not revisit his preliminary injunction ruling and another trial judge necessarily would have to consider the matter. The record indicates that the Wachovia Plaintiffs asked for the recusal due to their concern that if additional defendants were added to the case in the future, those defendants might possibly object to Judge Ervin presiding over the matter due to his owning Wachovia stock and his wife's applying for employment with the Wachovia Foundation. Contrary to Defendants' assertion, we do not believe that this constitutes "judge shopping[,]" which, in and of itself, obviated the necessity of a finding of a change in circumstances. *Woolridge*, 357 N.C. at 550, 592 S.E.2d at 194 (internal quotation marks omitted). However, given that Judge Ervin's recusal barred him from revisiting the matter, we believe that Judge Diaz, because the case was reassigned to him by the Chief Justice, stepped into Judge Ervin's shoes and could, in his discretion, revisit the preliminary injunction and rule on it absent a finding of changed circumstances.

WACHOVIA BANK v. HARBINGER CAPITAL PARTNERS MASTER FUND 1, LTD.

[201 N.C. App. 507 (2009)]

Defendants nevertheless argue that even if Judge Diaz was required to determine that sufficient changed circumstances existed to support the modification of Judge Ervin's preliminary injunction order, the filing of the more comprehensive New York Action constituted a sufficient change in circumstances to support the modification. Defendants point to Judge Diaz's findings that: (1) the Fund Defendants and other holders of interests in the Credit Facility had banded together to sue in a single action, in a single forum—the Southern District of New York; (2) the New York Action included a "broader scope of claims and parties" than the North Carolina action; and (3) by virtue of the claims and parties involved, the New York Action is "better able to arrive at a more comprehensive resolution of the litigation."

Here, Judge Diaz determined that the more comprehensive New York Action eliminated the threat of the Wachovia Plaintiffs' facing a multiplicity of lawsuits in multiple forums relating to the assigned claims, which was the concern articulated by Judge Ervin in his order granting the preliminary injunction. While the Agent Defendants are not parties to the New York Action, Judge Diaz correctly recognized that the Agent Defendants have no direct interests in the Credit Facility and, therefore, have no claims to pursue against the Wachovia Plaintiffs arising from those interests. Moreover, while the plaintiffs in the New York Action did not assert any federal or state claims against Wachovia Bank, Judge Diaz determined that because WCM is an affiliate of Wachovia Bank, WCM could adequately represent Wachovia Bank's interests.

The Wachovia Plaintiffs contend that "North Carolina case law squarely rejects th[e] argument" that the filing of the New York Action constitutes a sufficient change in circumstances. The Wachovia Plaintiffs first claim that because the filing of the New York Action was an event anticipated or foreseen by Judge Ervin, it does not amount to a change in circumstances. In support of their contention, they rely on *Britt v. Britt*, 49 N.C. App. 463, 271 S.E.2d 921 (1980). *Britt*, however, does not involve the issue of one superior court judge's overruling another on the basis of changed circumstances. Rather, *Britt* addresses whether, in accordance with N.C. Gen. Stat. § 50-16.9 (2007) (modification of an alimony or postseparation support order), a decrease in the income of a parent who is paying alimony and an increase in the income of a parent who is receiving alimony is, by itself, a substantial change in circumstances supporting the decrease of the original alimony award. *Id.* at 469-71, 271

WACHOVIA BANK v. HARBINGER CAPITAL PARTNERS MASTER FUND 1, LTD.

[201 N.C. App. 507 (2009)]

S.E.2d at 926-27. *Britt* does not stand for the proposition for which it is asserted by the Wachovia Plaintiffs—nowhere in *Britt* does this Court address whether a foreseeable event may constitute a change in circumstances sufficient to support a modification of a prior order. Consequently, *Britt* is inapposite here.

Next, citing to *Wolf v. Wolf*, 151 N.C. App. 523, 566 S.E.2d 516 (2002), and *Mittendorff v. Mittendorff*, 133 N.C. App. 343, 515 S.E.2d 464 (1999), the Wachovia Plaintiffs argue that the New York Action does not amount to a sufficient change in circumstances because "[a]n enjoined party cannot take voluntary action . . . and then contend that its action warrants modification of a Preliminary Injunction[,]" particularly where the action violates the injunction. Neither *Wolf* nor *Mittendorff* support the Wachovia Plaintiffs' argument, however. Both cases, like *Britt*, deal with modification of an alimony or postseparation order. Neither case involves a preliminary injunction or, consequently, whether an enjoined party's conduct in violation of an injunction may result in a change of circumstances warranting modification of the injunction.

Finally, while Judge Diaz declined to rule on the Wachovia Plaintiffs' motion to hold the Fund Defendants in contempt for filing a federal RICO claim against WCM in the New York Action, Judge Ervin's preliminary injunction order does not explicitly enjoin the Fund Defendants from asserting claims against the Wachovia Plaintiffs that arise under federal law. Rather, it prohibits them "from asserting . . . [various] statutory or common law causes of action, *whether arising under the law of North Carolina or of any other state.*" (Emphasis added.)

In sum, we do not believe that under the facts of this case Judge Diaz was required to find that a change in circumstances had occurred in order to allow him to modify Judge Ervin's preliminary injunction order. Assuming, *arguendo*, that a determination that a change in circumstances was necessary, we conclude that the more comprehensive New York Action was a sufficient change in circumstances to support Judge Diaz's modification of the preliminary injunction.

## C. Entry of Stay

[3] The Wachovia Plaintiffs next challenge Judge Diaz's staying this action under N.C. Gen. Stat. § 1-75.12(a), which authorizes a trial court to stay an action in this State in order to allow the action to be

WACHOVIA BANK v. HARBINGER CAPITAL PARTNERS MASTER FUND 1, LTD.

[201 N.C. App. 507 (2009)]

tried in another jurisdiction. In *Lawyers Mut. Liab. Ins. Co. of N.C. v. Nexsen Pruet Jacobs & Pollard,* 112 N.C. App. 53, 356, 435 S.E.2d 571, 573 (1993), this Court enumerated several factors the trial court may consider in evaluating whether to stay an action pursuant to N.C. Gen. Stat. § 1-75.12(a):

> (1) the nature of the case, (2) the convenience of the witnesses, (3) the availability of compulsory process to produce witnesses, (4) the relative ease of access to sources of proof, (5) the applicable law, (6) the burden of litigating matters not of local concern, (7) the desirability of litigating matters of local concern in local courts, (8) convenience and access to another forum, (9) choice of forum by plaintiff, and (10) all other practical considerations.

Similar to their argument regarding modification of the preliminary injunction, the Wachovia Plaintiffs claim that the trial court's decision whether to enter a stay pursuant to N.C. Gen. Stat. § 1-75.12(a) should be reviewed de novo on appeal. Contrary to the Wachovia Plaintiffs' contention, however, this Court has consistently held that "[e]ntry of an order under G.S. 1-75.12 is a matter within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion." *Home Indemnity Co. v. Hoechst-Celanese Corp.*, 99 N.C. App. 322, 325, 393 S.E.2d 118, 120, *appeal dismissed and disc. review denied*, 327 N.C. 428, 396 S.E.2d 611 (1990); *accord Lawyers Mut.*, 112 N.C. App. at 356, 435 S.E.2d at 573 ("declin[ing]" to review de novo entry of stay based on *Home Indemnity Co.* and reviewing for abuse of discretion). While a trial court does not abuse its discretion by not considering "each and every factor," the court does abuse its discretion

> if it abandons any consideration of these factors which this Court has deemed relevant in determining whether a stay is warranted. Further, in determining whether to grant a stay, it is not necessary that the trial court find that *all* factors positively support a stay, as long as it is able to conclude that (1) a substantial injustice would result if the trial court denied the stay, (2) the stay is warranted by those factors present, and (3) the alternative forum is convenient, reasonable, and fair.

*Lawyers Mut.*, 112 N.C. App. at 357, 435 S.E.2d at 574.

Here, Judge Diaz's order specifies that the *Lawyers Mutual* factors governed the motion to stay and states that he "carefully consid-

ered the[se] factors deemed relevant by our appellate courts when ruling on a motion to stay." While Judge Diaz recognized that "the record here is silent as to most of the[se] factors[,]" the "available [evidence] on the question [led him] to conclude that a stay is appropriate." In his order, Judge Diaz extensively discussed the relevant factors and determined:

(112) I find that the SDNY is a fair and convenient forum for the litigation of the claims before me. I also reject the notion that granting Defendants' Motion to Stay "simply shift(s) the inconvenience from one party to another." . . .

(113) Instead, my decision merely recognizes the practical reality that the New York Action is better able to arrive at a more comprehensive resolution of the litigation, given the broader scope of claims and parties before it. As a result, while this Court is certainly capable of handling this case, judicial economy counsels against my proceeding further.

(114) In sum, I have determined that (1) a stay is warranted by those factors present on the record before me, (2) the SDNY is a convenient, reasonable, fair, and more comprehensive forum for the resolution of this litigation, and (3) it would work a substantial injustice for this action to be tried in North Carolina.

Having carefully reviewed Judge Diaz's order, we conclude that he did not abuse his discretion in staying the Wachovia Plaintiffs' North Carolina action. Judge Diaz's order thoroughly identifies and analyzes the applicable *Lawyers Mutual* factors and reaches a reasonable conclusion that, in light of the more comprehensive New York Action, staying the North Carolina action is a just result.[5] We, therefore, affirm.

Affirmed.

Judges STEELMAN and JACKSON concur.

---

5. We note that Judge Diaz concluded his order stating that if the New York Action were dismissed, he "would obviously revisit [his] stay order."