Price v. Carlson, 2018 NCBC 133.

STATE OF NORTH CAROLINA

MOORE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 938

KEVIN PRICE; and JUSTIN FULLER,

        Plaintiffs,

v.

JEFFREY A. CARLSON; and JOHN D. SINSLEY, JR.,

        Defendants,

v.

G2 TELECOM, INC.,

        Nominal
        Defendant.

**ORDER AND OPINION ON
PLAINTIFFS' VERIFIED MOTION
FOR CONTEMPT AND TO EXPAND
THE PRELIMINARY INJUNCTION
PROTECTIONS, DEFENDANTS'
MOTION TO VACATE INJUNCTION,
AND SUPPLEMENTAL MOTIONS
AND OBJECTIONS**

1. **THIS MATTER** is before the Court upon (i) Plaintiffs' Verified Motion for Contempt and to Expand the Preliminary Injunction Protections (the "Motion for Contempt and Modification") and (ii) Defendants' Motion to Vacate Injunction (the "Motion to Vacate") in the above-captioned case. This Order and Opinion also addresses (iii) Plaintiffs' Objection to the Untimely Filed Supplemental Affidavit of Jeffrey A. Carlson and (iv) Defendants' December 19, 2018 Motion for Extension of Time.

2. On December 7, 2018 Plaintiffs filed the Motion for Contempt and Modification, and Defendants filed the Motion to Vacate. The Court held a hearing on both motions on December 13, 2018 at which Plaintiffs and Defendants were represented by counsel. After considering the arguments of counsel at the hearing,

the briefs in support of and in opposition to the motions, and other appropriate matters of record, the Court decides the pending motions as follows.[1]

> *Van Camp & Van O'Linda, PLLC, by James R. Van Camp and William M. Van O'Linda, Jr., for Plaintiffs Kevin Price and Justin Fuller.*
>
> *Parry Tyndall White, by James C. White and Michelle M. Walker, and Connor Law Group, by Gregory S. Connor, for Defendants Jeffery A. Carlson and John D. Sinsley, Jr.*

Bledsoe, Chief Judge.

## I.

## BACKGROUND

3.  Plaintiffs Kevin Price ("Price") and Justin Fuller ("Fuller," and together with Price, "Plaintiffs") and Defendants Jeffrey A. Carlson ("Carlson") and John D. Sinsley ("Sinsley," and together with Carlson, "Defendants") are the four shareholders of G2 Telecom, Inc. ("G2"), a Delaware corporation. (Verified Compl. and Mot. TRO and Prelim. Inj. ¶¶ 1–5 [hereinafter "Compl."], ECF No. 4.)  G2's Board of Directors has

---

[1]  The Court limited briefing on Plaintiffs' and Defendants' motions to supporting and opposition briefs.  At the December 13, 2018 hearing, Plaintiffs' counsel requested the opportunity to submit additional materials in support of Plaintiffs' Motion for Contempt and Modification, which counsel represented were erroneously not included in Plaintiffs' initial filing, as well as an affidavit in response to assertions made by Defendants in their materials opposing the Motion for Contempt and Modification (the "Reply Affidavit").  The Court allowed Plaintiffs' counsel to hand these materials to the Court at the December 13 hearing and file the materials that same day.  The Court gave Defendants, at their request, through December 18, 2018 to file an affidavit responding to the Reply Affidavit (the "Supplemental Affidavit").  Defendants did not file their Supplemental Affidavit until December 19, 2018, and Plaintiffs objected to its timing and scope.  Defendants then moved for a *post hoc* extension of time.  The Court has reviewed the Supplemental Affidavit and finds that it would not alter the Court's decisions on matters discussed in this Order and Opinion. The Court will, in its discretion, deny Defendants' untimely motion for an extension of time, grant Plaintiffs' request to strike the Supplemental Affidavit, and not consider the Supplemental Affidavit in ruling on matters herein.

appointed Sinsley to serve as President of G2, Carlson to serve as Vice President, Price to serve as Secretary, and Fuller to serve as Treasurer. (Compl. ¶ 22.)

4. On September 7, 2018, following a motion by Plaintiffs, the Honorable James M. Webb entered a preliminary injunction in this action (the "Preliminary Injunction"). In the Preliminary Injunction, Judge Webb found that Defendants had repudiated and therefore breached the terms of a March 4, 2015 Shareholders' Agreement (the "Shareholders' Agreement") between Plaintiffs and Defendants and that Plaintiffs had shown they would suffer irreparable harm if Defendants "continue[d] to breach the terms of the Shareholders' Agreement[,]" (Prelim. Inj. 2–3, ECF No. 6.) Judge Webb then concluded that Plaintiffs had demonstrated a likelihood of success on the merits of their claims for declaratory judgment and breach of contract, (Prelim. Inj. 3), and ordered as follows:

a. "That the Defendants and those persons in active concert or participation with the Defendants are enjoined and prohibited from conducting . . . shareholders' meetings where the proposed resolutions or business is the same or similar to those matters proposed [for consideration] in the August 15, 2018 Notice of Meeting of Shareholders pending the entry of final judgment on Plaintiffs' claims." (Prelim. Inj. 4.)

b. "That the Board of Directors of [G2] is limited to four members pending the entry of final judgment on Plaintiffs' claims." (Prelim. Inj. 4.)

c. "That Jeffrey A. Carlson, John D. Sinsley, Kevin Price, and Justin Fuller each have the right to designate one member of the Board of Directors pursuant to the Shareholders' Agreement with each having one vote pending the entry of final judgment on Plaintiffs' claims." (Prelim. Inj. 3.)

d. "That any party is prohibited from violating the terms of the Certificate of Incorporation of [G2], its Bylaws and the terms of the March 4, 2015 Shareholders' Agreement." (Prelim. Inj. 5.)

e. That the Preliminary Injunction "shall remain in full force and effect during the pendency of this action subject to further Orders of this Court and the security shall remain in the amount of $500.00 without prejudice to [Defendants' ability] to move for an increase at a later date." (Prelim. Inj. 5.)

5. On September 13, 2018, Defendants filed a Notice of Designation seeking to designate this action as a mandatory complex business case under N.C. Gen. Stat. § 7A-45.4. (Notice Designation 1, ECF No. 7.) That same day, Chief Justice Mark R. Martin of the Supreme Court of North Carolina ordered that this action be designated as a mandatory complex business case under N.C. Gen. Stat. § 7A-45.4(a). (Designation Order, ECF No. 3.) The case was then assigned to the undersigned. (Assignment Order, ECF No. 2.)

6. On or about November 30, 2018, Sinsley sent Price and Fuller letters in which Sinsley indicated that he was, as President of G2, terminating Plaintiffs'

employment with the company. (Exs. Pls.' Br. Supp. Verified Mot. Contempt and to Expand Prelim. Inj. Protections 1, 5 [hereinafter "Termination Letters"], ECF No. 39.) The letters also contained a section titled "Termination as Employee-Shareholders." (Termination Letters 2, 6.) This section asserted that Plaintiffs' termination would be considered a "Call Event" under the Shareholders' Agreement and that this Call Event granted G2 the right to purchase each Plaintiff's shares in the company for $1. (Termination Letters 2, 6.) The Shareholders' Agreement defines "Employee-Shareholder" as shareholders who are "also officers, employees or directors (or some combination thereof)[.]" (Compl. Ex. 3, at 2 [hereinafter "Shareholders' Agreement"], ECF No. 4.)

7. All motions before the Court are ripe for resolution.

II.

ANALYSIS

8. The circumstances under which a court may enter a preliminary injunction are well settled.

> A preliminary injunction will be issued only "(1) if a plaintiff is able to show likelihood of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation."

*Providence Volunteer Fire Dep't v. Town of Weddington*, 800 S.E.2d 425, 435 (N.C. Ct. App. 2017) (quoting *Ridge Cmty. Inv'rs, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977)). The entry of a preliminary injunction is an interlocutory order. *Id.*

9.      "One superior court judge may only modify, overrule, or change the order of another superior court judge where the original order was (1) interlocutory, (2) discretionary, and (3) there has been a substantial change of circumstances since the entry of the prior order." *Crook v. KRC Mgmt. Corp.*, 206 N.C. App. 179, 189, 697 S.E.2d 449, 456 (2010) (quoting *First Fin. Ins. Co. v. Commercial Coverage, Inc.*, 154 N.C. App. 504, 507, 572 S.E.2d 259, 262 (2002)).  As such, the general rule is that "one superior court judge may modify or dissolve a preliminary injunction order entered by another judge only upon a clear showing of changed conditions since the entry of the [initial preliminary injunction] order." *Wachovia Bank v. Harbinger Capital Partners Master Fund I, Ltd.*, 2008 NCBC LEXIS 6, at *16 (N.C. Super. Ct. Mar. 13, 2008), *aff'd*, 201 N.C. App. 507, 687 S.E.2d 487 (2009).  The changed conditions must "bear upon the propriety" of the previous order, *see Calloway v. Ford Motor Co.*, 281 N.C. 496, 505, 189 S.E.2d 484, 490 (1972), and the burden of showing a change in circumstances rests with the party seeking modification or dissolution of the preliminary injunction, *Wachovia Bank v. Harbinger Capital Partners Master Fund I, Ltd.*, 201 N.C. App. 507, 517, 687 S.E.2d 487, 493 (2009).  Where modification is allowed, the decision to modify or refuse to dissolve a preliminary injunction is left to the discretion of the trial court.  *Id.* at 516, 687 S.E.2d at 493.  Findings of fact and other proceedings before the trial court relating to a motion for preliminary injunction are not binding on the parties or the court at a trial on the merits.  *See Schloss v. Jamison*, 258 N.C. 271, 276–77, 128 S.E.2d 590, 594 (1962).

A.    Defendants' Motion to Vacate

10.    Defendants request that this Court dissolve the Preliminary Injunction. Because the Preliminary Injunction was entered by Judge Webb, the Court must first determine whether the undersigned may revisit the Preliminary Injunction on Defendants' motion at all.

11.    Defendants argue that the mere designation of this case to the Business Court is a change of circumstances sufficient for the Court to revisit the Preliminary Injunction, citing *Ruff v. Parex, Inc.*, 1999 NCBC LEXIS 6 (N.C. Super. Ct. June 17, 1999).  The Court disagrees.

12.    *Ruff* revisited a class certification order.  *Id.* at *2.  This Court's decision in *Ruff* made clear that, aside from designation, there existed "one or more changes in circumstance relating to the legal foundation of the original [class] certification order that [justified] its modification[.]"  *Id.* at *28.  Thus, while the Court also noted "that the designation and assignment of [the] case . . . [served] as a justification for the Court's exercise of its discretion in connection with the trial management issues the Court must oversee," *id.*, that fact was merely an additional consideration supporting the Court's decision.  *See id.* at *25–27 (detailing three major changed circumstances that gave this Court grounds to modify the certification order as a matter of law).  *Ruff* never held that the designation or assignment of a case to this Court, without more, would constitute changed circumstances such that a Business Court Judge could revisit an interlocutory order entered by one of his or her colleagues on the Superior Court bench.

13. At oral argument, the Court and Defendants' counsel also discussed whether the North Carolina Court of Appeals' decision in *Wachovia Bank* impacted the Court's ability to revisit Judge Webb's order. After a careful review, the Court concludes *Wachovia Bank* is inapplicable here.

14. In *Wachovia Bank*, the Court of Appeals noted that Judge Diaz, then of the Business Court, was able to revisit a preliminary injunction entered by Judge Ervin, a regular Superior Court judge, without a finding of changed circumstances following Judge Ervin's recusal from the case and the Chief Justice's entry of an order designating the case as exceptional and assigning it to Judge Diaz. *Wachovia Bank*, 201 N.C. App. at 517, 687 S.E.2d at 494. In particular, the reassignment in that case followed Judge Ervin's recusal due to circumstances which, while consented to by the parties, may have created the appearance of a conflict of interest for Judge Ervin. *Id.* at 514, 517, 687 S.E.2d at 491–94. The Court of Appeals concluded that the reassignment to Judge Diaz did not constitute "judge shopping"—the undignified act that the general rule against Superior Court judges revisiting each other's orders is meant to avoid. *Id.* at 517, 687 S.E.2d at 494. Instead, Judge Diaz was deemed to have "stepped into Judge Ervin's shoes" and could revisit the preliminary injunction as Judge Ervin would have. *Id.*

15. In contrast, the genesis of this action's reassignment to the undersigned and Judge Webb's inability to revisit the Preliminary Injunction is wholly a product of Defendants' election to litigate their case in the Business Court. On these facts, the Court concludes a showing of changed circumstances is required before the

Preliminary Injunction may be revisited. Just as one party may not "wait[] for another judge to come around and [take its] chances with" him or her, *State v. Woolridge*, 357 N.C. 544, 550, 592 S.E.2 191, 194 (2003) (quoting *Henry v. Hilliard*, 120 N.C. 479, 487, 27 S.E. 130, 132 (1897)), a party should not be allowed to actively seek out another judge to relitigate an unfavorable order.

16. For these reasons, the Court concludes that a change in circumstances is necessary to modify or dissolve the Preliminary Injunction entered by Judge Webb. The Court further concludes on this record that Defendants have not met their burden of showing a change in circumstances bearing upon the propriety of the provisions of the original Preliminary Injunction. Defendants' request that the Preliminary Injunction be vacated will thus be denied.

17. Defendants also request, as an alternative to the Court vacating the Preliminary Injunction, that the bond set in connection with the Preliminary Injunction be increased. Decisions concerning the "amount of security, if any, [that] is necessary to protect the enjoined party's interests" are left to the trial court's discretion. *Iverson v. TM One, Inc.*, 92 N.C. App. 161, 166, 374 S.E.2d 160, 164 (1988) (quoting *Keith v. Day*, 60 N.C. App. 559, 561, 299 S.E.2d 296, 297 (1983)). "In requesting an increase in the amount of security required for the issuance of a [preliminary injunction], the burden is upon the movant to place the Court in a position to make a determination whether such increase is justified." *Puerto Rico v. Price Comm'n*, 342 F. Supp. 1308, 1310–11 (D.P.R. 1972); *see Santos v. Reverse Mortg. Sols., Inc.*, No. 12-3296-SC, 2012 U.S. Dist. LEXIS 147473, at *23 (N.D. Cal. Oct. 12,

2012) (concluding defendants had failed to persuade the court to modify the state court's decision to not require a bond in association with a preliminary injunction).[2]

18.    The Court concludes that Defendants have not provided sufficient evidence to convince the Court that an increase in the amount of the bond set by Judge Webb is reasonable or necessary at this time.  Contrary to Defendants' assertions, the Preliminary Injunction does not prevent G2 from holding meetings necessary to administer and run its day-to-day affairs.  Defendants have also failed to present evidence that the Preliminary Injunction, if wrongful, will cause them individual injury or evidence as to the amount of any such injury.  Thus, Defendants' request that the Court modify the bond necessary for the issuance of the Preliminary Injunction will be denied.

B.    Plaintiffs' Motion for Contempt and Modification

19.    Plaintiffs' Motion for Contempt and Modification asks the Court to hold Defendants in contempt for firing Plaintiffs and hiring other employees to work for G2, for withholding financial information from Plaintiffs, for terminating Plaintiffs' access to e-mail and other electronic information relating to G2, and for allegedly withholding shareholder distributions.  Plaintiffs also request that the Court modify the Preliminary Injunction in several ways.

20.    With respect to Plaintiffs' request that the Court hold Defendants in civil contempt for violating the Preliminary Injunction, Plaintiffs, as the moving,

---

[2] North Carolina courts look to federal decisions on Federal Rule of Civil Procedure 65(c) for guidance on issues concerning North Carolina Rule of Civil Procedure 65(c). *Keith*, 60 N.C. App. at 560–61, 229 S.E.2d at 297.

aggrieved parties, bear the burden of proving contempt. N.C. Gen. Stat. § 5A-23(a1). The elements of civil contempt are:

> [A] [f]ailure to comply with an order of a court . . . as long as: (1) The order remains in force; (2) The purpose of the order may still be served by compliance with the order; (2a) The noncompliance by the person to whom the order is directed is willful; and (3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.

N.C. Gen. Stat. § 5A-21(a). "Willfulness involves more than deliberation or conscious choice; it also imports a bad faith disregard for authority and the law." *Hancock v. Hancock*, 122 N.C. App. 518, 523, 471 S.E.2d 415, 418 (1996) (internal quotation marks omitted).

21. With respect to Plaintiffs' request that the Court modify the Preliminary Injunction, the Court first notes that it may clarify Judge Webb's previous order without a change of circumstances. *See Rosenstadt v. Queens Towers Homeowners' Ass'n*, 177 N.C. App. 273, 276, 628 S.E.2d 431, 433 (2006) (holding that a party's request that one judge clarify another judge's order did not constitute "judge shopping"). Further, to the extent that the Court's decisions herein modify Judge Webb's order, the Court concludes that Defendants' attempt to terminate Plaintiffs' employment with G2 constitutes a change of circumstances sufficient to revisit the Preliminary Injunction on Plaintiffs' motion, as these acts by Defendants may "warrant[] a different or new disposition of the matter." *Woolridge*, 357 N.C. at 550, 592 S.E.2d at 195.

22. Beginning with Plaintiffs' requests for shareholder information, Judge Webb ordered that the parties were "prohibited from violating . . . the terms of the

March 4, 2015 Shareholders' Agreement." (Prelim. Inj. 5.) That agreement states that G2 "shall permit each Shareholder, at such Shareholder's expense, to visit and inspect the Company's properties; examine its books of account and records; and discuss the Company's affairs, finances, and accounts with its officers, during normal business hours of the Company as may be reasonably requested by the Shareholder[.]" (Shareholders' Agreement § 3.2.)

23.   Under the Preliminary Injunction, Defendants must comply with section 3.2 of the Shareholders' Agreement. By the terms of the contract between the parties, no information request under statutory law is necessary for a shareholder of G2 to have access to the materials, records, and other information mentioned in section 3.2. Defendants shall therefore be ordered to comply with section 3.2, and Plaintiffs shall be permitted to "visit and inspect the Company's properties; examine its books of account and records; and discuss the Company's affairs, finances, and accounts with its officers, during normal business hours of the Company as may be reasonably requested[.]" (Shareholders' Agreement § 3.2.) For ease of assessing compliance, however, the Court will require Plaintiffs to make a written demand upon G2 before they may exercise their information rights set forth in the Shareholders' Agreement.

24.   Based on the above, the Court finds that Defendant's failure to abide by section 3.2 of the Shareholders' Agreement was a violation of the Preliminary Injunction. However, the Court finds that Plaintiffs have not met their burden of showing Defendants willfully violated the Preliminary Injunction with respect to this issue because the Preliminary Injunction did not set out Defendants' obligations with

respect to shareholders' information rights and contained only general instructions that Defendants were to follow G2's governing documents. *See Williams v. Chaney*, 792 S.E.2d 207, 210 (N.C. Ct. App. 2016); *In re Board of Comm'rs*, 4 N.C. App. 626, 629–30, 167 S.E.2d 488, 491 (1969) ("In view of the apparent vagueness of the order . . . and the lack of notice to show cause before entry of the Order appealed from, we reverse the adjudication of contempt[.]"). The Court will clarify this obligation under the Preliminary Injunction.

25. Turning to Defendants' purported termination of Plaintiffs' employment with G2 and G2's hiring of other employees, G2's Bylaws provide that "[t]he business and affairs of the corporation shall be managed by or under the direction of the Board of Directors of the corporation," (Compl. Ex. 2, art. II, § 1 [hereinafter, "Bylaws"], ECF No. 4), and that "the vote of the majority of the directors present at a meeting at which a quorum is present shall be [an] act of the Board," (Bylaws art. II, § 4). The Bylaws further provide that G2's officers are designated and chosen by the Board of Directors and that such officers "shall have such authority and perform such duties in the management and operation of the corporation as shall be prescribed in the resolutions of the Board of Directors designating and choosing such officers and prescribing their authority and duties[.]" (Bylaws art. III.) The Bylaws also state that officers "shall have such additional authority and duties as are incident to their office, except to the extent that [resolutions by the Board] may be inconsistent therewith." (Bylaws art. III.) G2's officers "may be removed, with or without cause, by the Board of Directors." (Bylaws art. III.)

26.     Based on the above and the current evidence in the record, Sinsley, as President of G2, does not appear to have the authority to remove Plaintiffs from their positions as Secretary and Treasurer of G2, a Delaware corporation. *See* 2 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 357 (perm. ed. rev. vol. 2014) ("Absent *express* authority, the president of a corporation has no power to remove an officer appointed by the board of directors where the power of removal is in the board[.]" (emphasis added)); *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 775 n.571 (Del. Ch. 2005) (noting the above point from *Fletcher* and adding that "the leading Delaware treatise[]" to address the issue states that "'presumably, the removal of officers is governed by the same provisions that regulate their election.'" (quoting Rodman Ward, Jr. et al., *Folk on the Delaware General Corporation Law* § 142.4 (4th ed. 2004))), *aff'd sub nom. Brehm v. Eisner*, 906 A.2d 27 (Del. 2006).

27.     The Court concludes, however, that the evidence at this early stage suggests that Sinsley does possess "additional authority and duties as are incident to [his] office," (Bylaws art. III), and that such authority includes the hiring and firing of employees. *See, e.g.*, *Lee v. Jenkins Bros.*, 268 F.2d 357, 367 (2d Cir. 1959) ("It is generally settled that the president as part of the regular course of business has authority to hire and discharge employees[.]"); 2A Fletcher, *supra*, § 597 (perm. ed. rev. vol. 2017) (noting "the common-sense rule is that the president has implied power to hire necessary help" and that such power "may be implied by law as pertaining to the usual and customary duties of the president of a corporation[.]"); *see also id.* § 556

("The modern view . . . tends to consider the president as the real head of the corporation with certain limited powers connected with the ordinary business of the corporation, or at least to hold that there is a rebuttable presumption that the president has such powers."). Sinsley therefore possessed the authority to terminate Plaintiffs' status as ordinary employees. *See Goldman v. Shahmoon*, 208 A.2d 492, 493–94 (Del. Ch. 1965) (noting the "historically rigid view of the attributes which set a corporate officer apart from an employee" and that the latter "'is subordinate to the officers [of a corporation] and under their control and direction'") (quoting 13 Am. Jur. *Officers* § 866 (1936))); *see also* Russell M. Robinson II, *Robinson on North Carolina Corporation Law* § 16.03 (7th ed. 2017) ("An individual's position as an officer of a corporation and his position as an employee are two different relationships, although they may be tied together in various ways by contract. Of course, an individual can be an officer without being an employee, and vice versa."). To the extent the Shareholders' Agreement places limitations on Defendants' ability to terminate Plaintiffs' status as "Employee-Shareholders" of G2, those provisions do not appear to apply here, as Plaintiffs still remain officers and directors of G2. (*See* Shareholders' Agreement § 2.2(c)–(d).)

28. On this record, the Court concludes that Plaintiffs have failed to show that Sinsley's hiring and firing of employees, including Plaintiffs, violated the Bylaws or Shareholders' Agreement or the terms of the Preliminary Injunction. Thus, in connection with Plaintiffs' request that the Court hold Defendants in civil contempt

on this basis, the Court finds that Plaintiffs have not shown a failure to comply with the Preliminary Injunction.

29. As to Plaintiffs' request that the Court modify the Preliminary Injunction to enjoin Defendants from hiring or firing employees, the Court concludes that Plaintiffs have failed to carry their burden of showing that they, as individuals, will be irreparably harmed unless Defendants' conduct is enjoined[3] or that they are likely to succeed on the merits of a legal claim that would prevent their termination as employees or show that such termination was wrongful.

30. Based upon the above, the Court further concludes that Plaintiffs are entitled as officers and directors of G2 to have the Preliminary Injunction modified to allow them access to their company e-mail or electronic information relating to G2, but only to the extent necessary to remove any risk that Plaintiffs' lack of access will cause them to breach their duties as officers or directors of G2. The Court finds, however, that Plaintiffs have failed to show that Defendants' termination of Plaintiffs' access to e-mail or other electronic information constituted a willful violation of the Preliminary Injunction.

31. Plaintiffs also request that the Court hold Defendants in contempt for unilaterally withholding shareholder distributions from Plaintiffs. In the alternative, Plaintiffs ask the Court to expand the Preliminary Injunction to order

---

[3] "An injunction ordinarily will not be granted where there is an adequate legal remedy which is as practical and efficient as is the equitable remedy." *A.E.P. Indus., Inc. v. McClure*, 58 N.C. App. 155, 156, 293 S.E.2d 232, 233 (1982) (internal quotation marks omitted), *rev'd on other grounds*, 308 N.C. 393, 302 S.E.2d 754 (1983).

that G2 make regular distributions pursuant to a formula agreed upon at a March 15, 2015 Board of Directors meeting.

32. Reviewing the record before it at this time, the Court finds that Plaintiffs have not met their burden of showing that the payment of distributions was within the scope of the Preliminary Injunction or that G2 or Defendants willfully violated the Preliminary Injunction by failing to pay distributions. (*See* Prelim. Inj. 5 (prohibiting any party "from violating the terms of the Certificate of Incorporation of [G2], its Bylaws and the terms of the March 4, 2015 Shareholders' Agreement" but omitting any reference to the Board of Directors' March 15, 2015 resolution).)

33. Further, the Court concludes that Plaintiffs have not met their burden to obtain a modification of the Preliminary Injunction to require distributions. While it appears on the current record that withholding distributions to G2's shareholders may be contrary to the Board of Directors' March 15, 2015 resolution and a deviation from the course of conduct among G2 and its shareholders and directors,[4] Plaintiffs' Complaint does not reflect that Plaintiffs seek to establish such a right in this action. Plaintiffs' claim for breach of contract relates to the Shareholders' Agreement, a document that does not address G2's distributions to shareholders. (*See* Compl. ¶¶ 45–51.) Plaintiffs' claim for a declaratory judgment requests that the Court declare that G2's governing documents and the Shareholders' Agreement are binding and enforceable between G2's shareholders "regarding the composition and function of

---

[4] A cessation of distributions would also appear to be contrary to Defendants' representation to Judge Webb at the September 6, 2018 hearing on Plaintiffs' Motion for Preliminary Injunction that Defendants planned to continue distributions. (Hearing Mot. Prelim. Inj. Tr. 27:2–5, ECF No. 48.)

the Board of Directors" and does not seek an adjudication of shareholders' rights concerning distributions. (Compl. ¶ 42.) As such, Plaintiffs have not advanced a claim based on the March 15, 2015 Board resolution or sought relief in their Complaint that would permit the Court to enter an order enjoining Defendants or G2 with respect to G2's distributions to shareholders.

34. Finally, the Court concludes that Plaintiffs have failed to meet their burden with respect to their request that the Court modify the Preliminary Injunction to include a "'catch-all' provision which prohibits individual parties from taking unilateral action relating to the business and affairs of [G2], subject to any approved action of the Board of Directors." (Pls.' Br. Supp. Verified Mot. Contempt and to Expand Prelim. Inj. Protections 17, ECF No. 38). The Court will not modify the Preliminary Injunction in this manner. *See* N.C. R. Civ. P. 65(d) (requiring an injunction to state specific terms); *see also Louis W. Epstein Family P'ship v. KMart Corp.*, 13 F.3d 762, 771–72 (3d Cir. 1994) (remanding unspecific "catch-all" provision to district court with instructions to strike, stating, "One party should not be allowed to hold the club of contempt forever over the other's head").

## III.

## CONCLUSION

35. **WHEREFORE**, the Court, in the exercise of its discretion, hereby **ORDERS** as follows:

    a. Defendants' Motion to Vacate is **DENIED**.

b.  Plaintiffs' Motion for Contempt and Modification is **GRANTED in part** and **DENIED in part** as follows:

   i.  Consistent with Section 3.2 of the Shareholders' Agreement, upon a written request by either Plaintiff, Defendants and G2 shall permit Plaintiffs, at Plaintiffs' expense, to visit and inspect G2's properties, to examine its books of account and records, and to discuss G2's affairs, finances, and accounts with its officers during normal business hours of G2 as may be reasonably requested by Plaintiffs.  G2 shall not be obligated to provide access to any information that is reasonably considered a trade secret or confidential information (unless covered by a confidentiality agreement, in form acceptable to G2) or the disclosure of which would adversely affect the attorney-client privilege between G2 and its counsel.

   ii.  To the extent Plaintiffs' Motion for Contempt and Modification asks the Court to find Defendants in contempt for terminating Plaintiffs as employees of G2 or hiring other employees, the motion is **DENIED**.

   iii.  To the extent Plaintiffs' Motion for Contempt and Modification asks the Court to Modify the Preliminary Injunction to enjoin Defendants from hiring or firing G2's employees, the motion is **DENIED**.

iv. To the extent Plaintiffs' Motion for Contempt and Modification asks the Court to find Defendants in contempt for terminating Plaintiffs' access to e-mail or electronic information relating to G2, the motion is **DENIED**.

v. To the extent Plaintiffs' Motion for Contempt and Modification asks the Court to modify the Preliminary Injunction with regard to Plaintiffs' access to e-mail or electronic information relating to G2, the motion is **GRANTED** subject to this limitation: Defendants and G2 shall provide Plaintiffs with access to their e-mail or electronic information relating to G2 to the extent reasonably necessary to allow Plaintiffs to fulfill their duties as officers or directors of G2.

vi. To the extent Plaintiffs' Motion for Contempt and Modification asks the Court to find Defendants in contempt for G2's withholding of shareholder distributions, the motion is **DENIED**.

vii. To the extent Plaintiffs' Motion for Contempt and Modification asks the Court to modify the Preliminary Injunction to require G2 to make distributions to shareholders, the motion is **DENIED**.

viii. To the extent Plaintiffs' Motion for Contempt and Modification asks the Court to modify the Preliminary Injunction to prohibit individual parties from taking unilateral action relating to the

business and affairs of G2, subject to any approved action of the Board of Directors, the motion is **DENIED**.

c. Unless otherwise ordered by the Court, Defendants shall not have any further obligation to pay Plaintiffs compensation in connection with Plaintiffs' previous positions with G2 as ordinary employees during the pendency of this litigation. This provision does not affect G2's obligations to Plaintiffs with respect to any compensation Plaintiffs receive as directors or officers of G2 and does not address whether Plaintiffs are entitled to distributions from G2 as shareholders.

d. Defendants' December 19, 2018 Motion for Extension of Time is **DENIED**.

e. Plaintiffs' Objection to the Untimely Filed Supplemental Affidavit of Jeffrey A. Carlson is **GRANTED** and the Supplemental Affidavit is hereby stricken from the record. The Court did not consider the Supplemental Affidavit in ruling on matters discussed in this Order and Opinion and has further determined that the statements made in the Supplemental Affidavit would not alter the Court's ruling on the pending motions. The Court's ruling is based on timeliness grounds only and is without prejudice to Defendants' right to timely file the Supplemental Affidavit in connection with other matters that may arise in the course of this litigation.

**SO ORDERED**, this the 21st day of December, 2018.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge