STATE OF NORTH CAROLINA v. VAUGHN WOOLRIDGE A/K/A PAUL REED

No. 41PA02

(Filed 7 November 2003)

**Judges— superior court judge reconsidering order by another superior court judge—motion to suppress heroin**

The trial court erred in a maintaining a dwelling for keeping or selling controlled substances, trafficking in heroin by possession, trafficking in heroin by manufacturing, and conspiracy to traffic heroin by possession case when one superior court judge reconsidered an order by another superior court judge that originally granted defendant's motion to suppress the heroin and upon reconsideration denied defendant's motion to suppress, because: (1) an order of one superior court judge may be reconsidered by another only if the party seeking to alter the original order makes a sufficient showing of a substantial change in circumstances during the interim which presently warrants a different or new disposition of the matter; and (2) in this case the State did not present evidence of a substantial change of circumstances warranting reconsideration of the order, but instead presented the same or similar evidence based upon the new legal theory of inevitable discovery doctrine that the State could have presented to the first judge.

On discretionary review pursuant to N.C.G.S. § 7A-31 from a unanimous decision of the Court of Appeals, 147 N.C. App. 685, 557 S.E.2d 158 (2001), finding no error after appeal of judgments entered 5 May 2000 by Judge Orlando F. Hudson in Superior Court, Wake County. Heard in the Supreme Court 9 April 2003.

## STATE v. WOOLRIDGE

[357 N.C. 544 (2003)]

*Roy Cooper, Attorney General, by Joyce Rutledge, Assistant Attorney General, for the State.*

*The Law Offices of James D. Williams, Jr., P.A., by James D. Williams, Jr., and Deria Phillips Hayes, for defendant-appellant.*

BRADY, Justice.

The sole issue presented for our review is whether one superior court judge may reconsider an order entered by another superior court judge. Based upon well-established case law, we conclude that one superior court judge may not reconsider an order entered by another; accordingly, we reverse the decision of the Court of Appeals.

On 6 April 1998, Vaughn Woolridge, a/k/a Paul Reed, (defendant) was indicted for maintaining a dwelling for keeping or selling controlled substances, trafficking in heroin by possession, trafficking in heroin by manufacturing, and conspiracy to traffic heroin by possession. Defendant moved to suppress evidence of twenty grams of heroin seized at his residence prior to the issuance of a search warrant for that location. Pursuant to defendant's motion to suppress, a hearing was held before Wake County Superior Court Judge Abraham Penn Jones in September 1999.

Evidence presented by the State at this suppression hearing tended to show that defendant resided in an apartment located on Tapers Drive in Raleigh, North Carolina. On 18 December 1997 at approximately 1:00 p.m., the Raleigh Police Department began an initial surveillance of defendant's residence. The surveillance was initiated based upon information obtained from a confidential source that both heroin and guns were being sold from, stored in, and distributed out of the residence.

Raleigh Police Sergeant A.J. Wisniewski testified that he began his surveillance of the apartment in the early evening hours of 18 December. At some point during Wisniewski's surveillance, Sergeant Michael Glendy informed Wisniewski that he had just placed defendant in police custody for a parole violation on a second-degree murder conviction. Glendy further informed Wisniewski that defendant was known to possess guns and drugs. Wisniewski was aware that Glendy and other officers were attempting to secure a search warrant for defendant's residence.

Shortly after Wisniewski began his surveillance, he observed a man walk up the stairway leading to the apartment, examine two chairs that were located on the porch outside of the apartment's entrance, and attempt to drag those chairs off the porch and down the adjoining stairway. Wisniewski approached the man and noticed that the man had a gun. The man identified himself as a bondsman and informed Wisniewski that someone had called and asked him to remove the chairs from the porch. Following a brief exchange between the bondsman and Wisniewski, the bondsman departed.

After the bondsman retreated, Wisniewski looked under both chairs. Wisniewski found nothing under the first chair; however, when he tipped the second chair over on its side, he observed a package approximately one and one-half or two-inches long in the lining of the chair. The officer retrieved the package and, recognizing its contents as heroin, placed it in his vehicle. Wisniewski estimated that he secured the heroin between 5:20 and 5:30 p.m.

Glendy obtained the search warrant at 7:20 p.m. and arrived at the residence to execute the warrant at approximately 7:40 p.m. According to Wisniewski, law enforcement officers conducted a search of the apartment's porch and other locations that could be reached from the apartment's door in addition to searching inside the apartment. Specifically, Wisniewski confirmed that the search would have encompassed the area where the chairs were located.

Following testimony from Wisniewski and Glendy, the State argued that defendant's motion to suppress should be denied because Wisniewski's seizure of the heroin was justified by the exigent circumstances exception to the search warrant requirement. The State contended that Wisniewski believed he was in danger, based upon his prior knowledge that defendant's residence was used to store weapons and drugs.

Judge Jones disagreed with the State and granted defendant's motion to suppress the twenty grams of heroin. Judge Jones signed a detailed order seven months later on 28 April 2000, in which he memorialized his findings of fact and conclusions of law. As reflected in his order, Judge Jones concluded that at the time Wisniewski looked under the chair, no warrant had been issued, and there were no exigent circumstances to justify Wisniewski's search.

On or about 1 October 1999, the State appealed the order suppressing the heroin to the Court of Appeals. The State subsequently

moved for additional time in which to serve the proposed record on appeal. The superior court granted the State's motion and instructed the State to file the proposed record by 3 February 2000. On 4 February 2000, defendant filed a motion to dismiss the State's appeal, arguing that the State had failed to file the record by the 3 February 2000 deadline and had further failed to deliver the trial transcripts by the appropriate deadline. It appears from the record that the State never served the proposed record or responded to defendant's motion to dismiss the appeal.

On or about 20 March 2000, defendant filed a motion to dismiss the indictments pending against him or to determine the admissibility of other evidence seized as a result of the execution of the search warrant. Defendant argued that there was no admissible evidence of drugs to support the charges against him. In support of his argument, defendant referenced Judge Jones' order suppressing the twenty grams of heroin.

On or about 28 April 2000, the State filed a separate document captioned "Motion." The State's "Motion" does not appear to be in response to defendant's filings. In its "Motion," the State requested that the trial court reexamine the evidence discovered and seized in the warrantless search, this time under the inevitable discovery exception to the search warrant requirement. The State noted that Judge Jones had previously concluded that the search was unlawful and that the heroin seized pursuant to that search should be suppressed. Nevertheless, the State argued that the issue of whether the heroin was admissible under the inevitable discovery exception was not before Judge Jones and therefore needed to be resolved.

Defendant subsequently filed a motion to suppress all evidence, including that which was found after the search warrant had been obtained. In support of his motion, defendant contended that evidence found pursuant to the search warrant was tainted by the illegal seizure of the heroin prior to the issuance and execution of the warrant.

In May 2000, Superior Court Judge Orlando F. Hudson held a hearing to resolve the pending motions of both defendant and the State. In support of its "Motion" to reexamine the evidence, the State argued that it was simply requesting that Judge Hudson now address an issue not considered by Judge Jones, that is, whether the heroin would have been inevitably discovered in the search conducted pursuant to the search warrant.

Defendant objected to the State's "Motion." Judge Hudson then inquired of the State whether it was permitted to raise the issue of inevitable discovery. In response, the State argued that, at the time of the hearing before Judge Jones, it believed the search was legal and that at the second hearing, it would be presenting new evidence showing that the heroin could have been inevitably discovered.

Judge Hudson overruled defendant's objection and allowed the State to present evidence in support of its motion. Judge Hudson noted: (1) that Judge Jones had, in fact, found that an illegal search had occurred but never addressed whether inevitable discovery applied; (2) that the State had not waived its right to raise the issue of inevitable discovery and that there was no prejudice to defendant in allowing the State to do so; and (3) that he was allowing the State's motion to reexamine the evidence in the interest of justice.

The State presented virtually the same evidence that it had presented at the first hearing before Judge Jones, with the addition of certain testimony tending to show that the heroin seized by Wisniewski would have been inevitably discovered in the subsequent search of defendant's apartment. Briefly, the evidence included testimony from Glendy that prior to Wisniewski's surveillance of the residence defendant was observed sitting in one of the chairs outside the apartment, that the chairs outside defendant's residence matched others found inside the residence, and that law enforcement officers had indeed searched the apartment's porch area during execution of the search warrant. Additionally, Wisniewski testified that if he had not searched for and seized the heroin prior to the issuance of the search warrant, he would have done so while the search warrant was being executed.

Following the State's presentation of evidence, Judge Hudson granted the State's motion, ruling as follows:

[A]fter listening to the evidence and arguments of counsel, that although Judge Jones' order suppressed the 20 plus grams of heroin because the search by the law enforcement officer preceded the acquisition of the search warrant, the [trial court] finds that Judge Jones did not consider, nor did the State argue[,] the applicability of the inevitable discovery exception.

This [c]ourt in its discretion has allowed the State's motion to now consider this exception as it applies to the facts. The [c]ourt

STATE v. WOOLRIDGE

[357 N.C. 544 (2003)]

finds that the State has carried its burden for proving that, although the heroin was illegally seized, it would have been inevitably legally discovered and seized pursuant to a legal search of the building.

Judge Hudson denied defendant's second motion to suppress and motion to dismiss the indictments. Thereafter, defendant's case proceeded to trial. Trial testimony revealed that law enforcement officers discovered $3,900 in cash, scales, a strainer, a cutting agent, and other items normally associated with drug trafficking inside defendant's apartment. Defendant testified at trial that he was not aware of any heroin in his residence and that he did not place heroin under one of the chairs found on the apartment's landing. At the close of all evidence, the trial court instructed the jury on the law, the jury deliberated, and the jury reached a verdict finding defendant guilty of all charges. The trial court consolidated three of the convictions for sentencing and, on 5 May 2000, sentenced defendant to two consecutive terms of 90 to 117 months' imprisonment.

Defendant appealed to the Court of Appeals, which, in a unanimous decision, found no error. On 19 December 2002, this Court allowed defendant's petition for discretionary review of the decision of the Court of Appeals as to one issue. We must therefore determine whether Judge Hudson erred in reconsidering Judge Jones' decision to grant defendant's motion to suppress the heroin.

"The power of one judge of the superior court is equal to and coordinate with that of another." *Michigan Nat'l Bank v. Hanner*, 268 N.C. 668, 670, 151 S.E.2d 579, 580 (1966). Accordingly, it is well established in our jurisprudence

that no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action.

*Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972). When the above-noted situation arises, the second judge may reconsider the order of the first judge "only in the limited situation where the party seeking to alter that prior ruling makes a sufficient showing of a substantial change in circumstances during the interim which presently warrants a different

or new disposition of the matter." *State v. Duvall*, 304 N.C. 557, 562, 284 S.E.2d 495, 499 (1981).

The reason one superior court judge is prohibited from reconsidering the decision of another has remained consistent for over one-hundred years. When one party "wait[s] for another [j]udge to come around and [takes its] chances with him," and the second judge overrules the first, an " 'unseemly conflict' " is created. *Henry v. Hilliard*, 120 N.C. 479, 487-88, 27 S.E. 130, 132 (1897) (quoting *Roulhac v. Brown*, 87 N.C. 1, 4 (1882)). Given this Court's intolerance for the impropriety referred to as "judge shopping" and its promotion of collegiality between judges of concurrent jurisdiction, this " 'unseemly conflict' . . . will not be tolerated." *Id. at* 488, 27 S.E. at 132 (quoting *Roulhac*, 87 N.C. at 4).

The orders at issue in the present case, initially granting defendant's motion to suppress and, upon reconsideration by a different judge, denying the motion to suppress, appear to violate the well-established rule announced by this Court in *Calloway*. The State contends that in seeking reconsideration of Judge Jones' order, it acted in good faith and that Judge Hudson did not err in reconsidering Judge Jones' suppression order because at the second suppression hearing it presented new evidence justifying reconsideration. According to the State, the "new" evidence consisted of testimony that the heroin would have inevitably been discovered after the search warrant had been issued. We find the State's argument unpersuasive.

As noted above, an order of one superior court judge may be reconsidered by another only if the party seeking to alter the original order "makes a sufficient showing of a substantial change in circumstances during the interim which presently warrants a different or new disposition of the matter." *Duvall*, 304 N.C. at 562, 284 S.E.2d at 499. The so-called "new" evidence presented by the State to Judge Hudson did not transpire, nor was it newly discovered, in between the time of Judge Jones' order granting defendant's motion to suppress and the State's motion seeking reconsideration of that order by Judge Hudson. Rather, that evidence was known to the State at the time of the first suppression hearing, and in fact, the State presented similar evidence at that first hearing. Clearly, the State did not present to Judge Hudson evidence of a substantial change in circumstances warranting reconsideration of Judge Jones' order, but simply presented the same or similar evidence based upon a new legal theory, the inevitable discovery doctrine.

**STATE v. WOOLRIDGE**

[357 N.C. 544 (2003)]

In fact, the State concedes in its arguments to this Court that it was presenting a new legal theory. The State contends that it was proper to seek a ruling from Judge Hudson because it did not ask Judge Hudson to reconsider or reverse Judge Jones' decision that the seizure of the heroin was illegal. Rather, the State maintains that it was simply asking Judge Hudson to consider, regardless of the illegality of the seizure, whether the heroin could have been inevitably discovered—a theory that the State could have, but did not, present to Judge Jones.

For the above-noted reasons, we conclude that circumstances did not exist to warrant reconsideration of Judge Jones' order. In the case *sub judice*, it appears that the prosecutor did what this Court does not tolerate: He "waited for another [j]udge to come around and took [his] chances with him." *Henry*, 120 N.C. at 487, 27 S.E. at 132.

In sum, we conclude that Judge Jones' order suppressing the heroin was not subject to reconsideration. Litigants and superior court judges must remain mindful that "[t]he power of one judge of the superior court is equal to and coordinate with that of another," *Michigan Nat'l Bank*, 268 N.C. at 670, 151 S.E.2d at 580, and when unseemly behavior such as "judge shopping" or a lack of collegiality between judges arises, we cannot condone such action.

For the foregoing reasons, Judge Hudson's suppression order, and the verdicts and judgments entered against defendant are vacated. We reverse the decision of the Court of Appeals and remand this case to that court for further remand to the Superior Court, Wake County, for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.