THERESA SHELF AND ROBERT SHELF, PETITIONERS v. WACHOVIA BANK, NA, AS THE TRUSTEE FOR THE BENEFIT OF TRAVIS GAMBRELL, BRYAN THOMPSON, AS PUBLIC ADMINISTRATOR FOR THE ESTATE OF TRAVIS GAMBRELL, TARA LARSON, IN HER OFFICIAL CAPACITY OF ACTING DIRECTOR OF THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES AND THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, RESPONDENTS

No. COA10-1510

(Filed 21 June 2011)

**Jurisdiction— subject matter—trust—second superior court order impermissibly overruled first order**

One superior court judge's order in a trust case granting summary judgment in favor of one defendant impermissibly overruled another superior court judge's order denying summary judgment on the same legal issue for the same defendant. The matter was remanded to superior court for further proceedings.

Appeal by Petitioners from order entered 15 April 2010 by Judge Kenneth C. Titus in Wake County Superior Court. Heard in the Court of Appeals 27 April 2011.

*Egerton & Associates, PA, by Wendy Nolan and Lawrence Egerton, for Petitioners.*

*Attorney General Roy Cooper, by Assistant Attorney General Joel L. Johnson, for Respondent North Carolina Department of Health and Human Services.*

*Womble Carlyle Sandrige & Rice, PLLC, by Elizabeth K. Arias, for Respondent Wachovia Bank, NA.*

STEPHENS, Judge.

Travis Gambrell ("Gambrell") was the beneficiary of an irrevocable "special needs trust" created on 14 June 2002 pursuant to a court-approved settlement in a medical malpractice action brought on Gambrell's behalf. Through the creation of the trust, Gambrell was eligible to receive governmental medical assistance, while also receiving distributions from the trust for his "extra and supplemental needs," provided that, upon Gambrell's death, "any state providing medical assistance to [] Gambrell shall receive all amounts remaining in the [t]rust up to an amount equal to the total medical assistance paid on behalf of [] Gambrell under any state plan." The trust instrument named Respondent Wachovia Bank, NA ("Wachovia") trustee and provided that during Gambrell's lifetime, Wachovia could, in its sole discretion, distribute funds to pay for Gambrell's "supplemental needs," which distributions could include "[r]easonable payments to caregivers, including, caregivers who may be related by blood to [] Gambrell." Throughout the life of the trust, Gambrell's grandparents, Petitioners Theresa Shelf and Robert Shelf (collectively, the "Shelfs"), received monthly distributions from the trust as compensation for caregiving services provided to Gambrell. In addition to the caregiving services Gambrell received from the Shelfs, Gambrell also received during his lifetime approximately $1.3 million worth of medical assistance from the State of North Carolina, via Respondent North Carolina Department of Health and Human Services, Division of Medical Assistance ("DHHS"). Gambrell died on 12 May 2008. At the time of Gambrell's death, the value of the remaining assets in the trust was $563,858 according to Wachovia.

On 5 February 2009, the Shelfs filed a petition with the Wake County Clerk of Superior Court, Estates Division, alleging that "the value of their caregiver services rendered to and expenditures made on behalf of [] Gambrell" "far exceeded" the amount of the trust distributions the Shelfs received for those services. The Shelfs contended that they were "entitled to an amount in excess of $500,000" and petitioned the court to "determine the amount of money due to them" and to "enter an [o]rder for an appropriate amount of monetary compensation."

DHHS, as a named respondent in the petition—along with the acting director of DHHS, Wachovia, and the public administrator of Gambrell's estate—responded to the Shelfs' petition by filing a motion to dismiss on 9 March 2009. On 23 July 2009, following the filing of various other responsive pleadings and motions by the parties, a consent order was entered, in which the parties agreed to transfer the action to Wake County Superior Court.

On 26 August 2009, DHHS filed a motion for summary judgment, asserting that the Shelfs "ceased to have any entitlement to the [t]rust corpus" upon Gambrell's death and that DHHS was entitled to judgment as a matter of law. The Shelfs filed their own motion for summary judgment on 2 September 2009. On 16 November 2009, Superior Court Judge Henry W. Hight, Jr., denied both motions.

On 7 January 2010, the Shelfs voluntarily dismissed their petition as to DHHS and the acting director of DHHS. Despite this dismissal, DHHS filed a 28 January 2010 motion to compel discovery, which was calendared for a 22 March 2010 hearing.

At the 22 March 2010 hearing before Superior Court Judge Kenneth C. Titus, DHHS filed a motion to intervene, which was granted by the trial court, and a claim for relief seeking a declaration that DHHS was entitled to "expeditious payment of the remainder of the trust assets." Judge Titus also heard arguments at the hearing regarding DHHS' 9 March 2009 motion to dismiss.

On 15 April 2010, Judge Titus entered an order in which he stated that "because[, at the hearing,] matters outside the pleadings were presented to and not excluded by the [c]ourt"—including the petition, the motion to dismiss, "the entire court file," and "the prior motion for summary judgment"—DHHS' motion to dismiss "shall be treated as a motion for summary judgment." In the order, Judge Titus allowed DHHS' converted motion for summary judgment and determined that, as a matter of law, the Shelfs "are entitled to no further distributions or payments from the assets of the [i]rrevocable [t]rust . . . for caregiving services rendered to [] Gambrell prior to his death." On 10 May 2010, the Shelfs gave notice of appeal "from the Order Entering Summary Judgment entered on April 15, 2010."

The first issue we address on appeal is whether Judge Titus' order granting summary judgment in favor of DHHS impermissibly overruled Judge Hight's order denying summary judgment for DHHS. Because this issue relates to jurisdiction and jurisdictional issues can

be raised at any time, even by a court *sua sponte, Crook v. KRC Mgmt. Corp.,* —— N.C. App. ——, ——, 697 S.E.2d 449, 453, *supersedeas denied, disc. review denied,* —— N.C. ——, 703 S.E.2d 442 (2010), this issue is properly before us despite the fact that the parties did not raise it on appeal.

Ordinarily, one superior court judge may not modify, overrule, or change the judgment of another superior court judge previously made in the same action. *State v. Woolridge,* 357 N.C. 544, 549, 592 S.E.2d 191, 194 (2003). Accordingly, one trial judge may not reconsider and grant a motion for summary judgment previously denied by another judge. *Hastings v. Seegars Fence Co.,* 128 N.C. App. 166, 168, 493 S.E.2d 782, 784 (1997).[1] However, "[a] second motion for summary judgment may be considered by the trial court [] when it presents legal issues different from those raised in the earlier motion." *Id.*

When questioned on this issue at oral argument, counsel for DHHS contended that Judge Titus' summary judgment order did not improperly overrule Judge Hight's order because the legal questions decided in the later motion for summary judgment were different from the questions decided in the earlier motion. We disagree.

DHHS' motion for summary judgment states, *inter alia,* as follows:

1. There is no genuine issue of material fact and [DHHS] should be granted judgment in its favor as a matter of law as the [t]rust instrument in question explicitly requires payback to [DHHS] upon the death of [] Gambrell.

. . . .

5. [The Shelfs] argue entitlement to the remaining Trust proceeds based on Section 1.4(a)(5) which allows "reasonable pay-

---

1. Although we acknowledge that Judge Titus was considering a motion to dismiss by DHHS rather than a second summary judgment motion, in determining whether one superior court judge impermissibly overruled another, the dispositive issue is not whether the forms or labels of the motions are the same, but rather it is whether the legal issues resolved by the trial judges were the same. *See, e.g., Madry v. Madry,* 106 N.C. App. 34, 38, 415 S.E.2d 74, 77 (1992) (reversing a trial court's decision and noting that "[d]espite the fact that [the second judge's] order is denominated a summary judgment, the legal issue decided by that judgment . . . was precisely the same issue decided to the contrary by [the first judge's] earlier order denying defendant's motion to amend"); *Adkins v. Stanly Cty. Bd. of Educ.,* —— N.C. App. ——, ——, 692 S.E.2d 470, 473 (2010) (noting that "one judge may not reconsider the legal conclusions of another judge").

ments to caregivers, including, caregivers who may be related by blood to Travis Gambrell." However, Section 1.4(a) only allows for such distributions "[d]uring the Lifetime of Travis Gambrell" as stated in the section heading.

6.   [The Shelfs] did, in fact, receive such compensation under the terms of the [t]rust during the lifetime of [] Gambrell in the form of $3,000 per month during the life of the [t]rust. Upon the death of [] Gambrell, the [t]rustee ceased such payments to [the Shelfs] pursuant to the explicit language of the [t]rust instrument.

7.   [The Shelfs] have not alleged any facts or circumstances which support[] a total disregard for explicit trust language.

8.   Upon the death of [] Gambrell, Petitioners ceased to have any entitlement to the [t]rust corpus.

In comparison, the relevant grounds for dismissal argued by DHHS in their motion to dismiss are as follows:

20.  [The Shelfs] have not alleged facts which would indicate an entitlement to any of the [t]rust proceeds. [The Shelfs] have merely cited trust language indicating that certain distributions could be made during the life of [] Gambrell, but have alleged no facts or cited any trust language which support a distribution to them following the death of [] Gambrell.

In our view, the issues raised by DHHS in the two motions are nearly identical: (1) from the motion for summary judgment: "[u]pon the death of [] Gambrell, [the Shelfs] ceased to have any entitlement to the [t]rust corpus"; (2) from the motion to dismiss: the Shelfs "have not alleged facts which would indicate an entitlement to any of the [t]rust proceeds" and "have alleged no facts or cited any trust language which support a distribution to them following the death of [] Gambrell." Accordingly, despite DHHS' contention to the contrary, it appears that the legal questions posed by DHHS in its motions were precisely the same, *i.e.*, whether the Shelfs had any entitlement to distributions from the trust corpus following Gambrell's death.[2]

Judge Hight denied DHHS' motion for summary judgment, necessarily concluding that the Shelfs are not precluded, as a matter of law,

---

2. Further, we find no support for DHHS' contention in their memorandum in support of the motion for summary judgment, in which DHHS again argued for the conclusion that the Shelfs "ceased to have any claim as caregivers" "[u]pon the death of [] Gambrell."

**SHELF v. WACHOVIA BANK**

[213 N.C. App. 82 (2011)]

from receiving any trust distributions upon Gambrell's death. However, in the same case five months later, Judge Titus overruled Judge Hight and arrived at the opposite conclusion: that, as a matter of law, the Shelfs are precluded from receiving distributions from the trust for services rendered to Gambrell prior to his death. Regardless of the accuracy of Judge Hight's initial conclusion, because Judge Titus' order impermissibly overrules Judge Hight's order, we must vacate Judge Titus' order granting summary judgment for DHHS. *Crook*,[3] —— N.C. App. at ——, 697 S.E.2d at 453 ("If one trial judge enters an order that unlawfully overrules an order entered by another trial judge, such an order must be vacated . . . ."). As we have addressed the only order from which appeal was taken, we remand this matter to the superior court for further proceedings.

VACATED AND REMANDED.

Judges STEELMAN and HUNTER, ROBERT N., JR., concur.

---

3. We also note the serious questions raised by Judge Titus' consideration of DHHS' motion to dismiss filed prior to DHHS' dismissal from, and subsequent intervention into, the action. *Cf. Stocum v. Oakley*, 185 N.C. App. 56, 62, 648 S.E.2d 227, 232-33 (2007) (noting the general rule that "when a party has earlier taken a voluntary dismissal, refiling the action begins the case anew" and "[i]t is as if the [first] suit had never been filed" (internal quotation marks omitted)), *disc. review denied*, 362 N.C. 372, 662 S.E.2d 394 (2008). However, as we have already concluded that Judge Titus' order must be vacated because it impermissibly overrules Judge Hight's prior order, we need not discuss any alternate grounds for vacation.