IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-546

Filed 21 March 2023

Mecklenburg, No. 15-CVS-20506

D&B MARINE, LLC, a Rhode Island Limited Liability Company, Plaintiff,

v.

AIG PROPERTY CASUALTY COMPANY f/k/a CHARTIS PROPERTY CASUALTY COMPANY, Defendant.

Appeal by Plaintiff from final Judgment entered 25 March 2022 by Judge Eric L. Levinson in Mecklenburg County Superior Court. Heard in the Court of Appeals 21 January 2023.

*The Sumwalt Group, by Vernon Sumwalt, and Killeen & Stern, PC, by Robert J. Killeen (pro hac vice) and Robert C. Stern (pro hac vice), for Plaintiff-Appellant.*

*Cranfill Sumner LLP, by Steven A. Bader, and Steptoe & Johnson LLP by Roger E. Warin (pro hac vice) and John F. O'Connor (pro hac vice), for Defendant-Appellee.*

RIGGS, Judge.

Plaintiff, D&B Marine, LLC, appeals from a partial summary judgment and a judgment entered after a jury trial on breach of contract and negligence claims with Defendant, AIG Property Casualty Company. Plaintiff claims that Mecklenburg Superior Court Judge Eric Levinson erred when he granted partial summary judgment finding that Plaintiff's claims for common law bad faith and Unfair or

Deceptive Trade Practices (UDTP) under N.C. Gen. Stat § 75-1.1 were untimely. Plaintiff also claims that the trial court erred when it denied Plaintiff's request for a jury instruction on equitable estoppel after allowing Defendant to include the affirmative defense of a policy exclusion related to rot and deterioration in the jury instruction and on the jury verdict form. Finally, Plaintiff claims the trial court erred when it gave a jury instruction regarding whether the sinking of the yacht was a new "occurrence" rather than one of the two covered occurrences.

After review, we affirm Judge Levinson's grant of partial summary judgment. We affirm the trial court ruling denying the requested jury instruction for equitable estoppel. Finally, we dismiss the final argument because Plaintiff failed to properly preserve the issue for appellate review.

## I.    Procedural & Factual History

This claim involves the tale of the unluckiest yacht and the series of unfortunate events that she encountered. The tale begins in January of 2013 when Plaintiff renewed an insurance policy with Defendant to provide coverage for its seventy-two-foot, Goetz custom yacht, Fearless. Fearless was designed by the renowned naval architect Eric Goetz, who also designed the 1992 America's Cup winner, America[3]. The insurance policy covered damages to, Fearless, and her contents "caused by an occurrence which happens within the policy period." The policy term began 1 January 2013 and was scheduled to run until 1 January 2014.

Only two days after Plaintiff renewed this yacht insurance policy, Fearless had her first fateful encounter. While sailing off the coast of St. Thomas in the U.S. Virgin Islands, Fearless struck a submerged rock. The encounter caused significant damage to her hull, and she had to be towed to a shipyard in St. Thomas for repairs.

Towards the end of January 2013, Plaintiff notified Defendant of this unfortunate encounter with a submerged rock, and Defendant accepted coverage for the claim. The parties vigorously dispute whether Plaintiff or Defendant was responsible for selecting the repair facilities for the yacht and whether Defendant should pay for repairs directly or reimburse Plaintiff for the repairs. However, the parties agree that Defendant issued payments to Plaintiff to cover repair expenses.

In early April 2013, the parties agreed that Fearless should be moved from St. Thomas to complete the repairs; however, the parties disagreed on where the repairs should be performed and who should make the decision. Eventually, the decision was made to move Fearless to the Rybovich shipyard in West Palm Beach, Florida, to complete the repairs. Before she left on this voyage, her captain discovered a crack in her hull along the aft section of her keel, in an area that had previously been repaired. Notwithstanding this crack, Fearless set sail for West Palm Beach, Florida.

During this voyage on 13 March 2013, Fearless had her second unfortunate event. While she was underway sailing toward the mainland, her previously repaired rudder fell off. Plaintiff notified Defendant of these additional damages, and Defendant accepted coverage for the claim to repair the rudder, again. Once Fearless

finally arrived at the Rybovich shipyard in West Palm Beach, Defendant was concerned that the damage from the rock encounter had caused water to seep into the hull resulting in moisture intrusion into the inner balsa, which could lead to long-term decay. Because of this concern, Rybovich hired a company, Fosters, to evaluate the damage to the hull. Fosters took a core sample of the hull on 3 July 2013 and recommended removing a six-foot-by-six-foot section of the hull because its balsa core was moist. This work was never performed, but it is unclear on this record why the work was not done. Plaintiff argued at trial that the failure to remove and replace this moist balsa core ultimately led to the untimely sinking of Fearless. Defendant argued that the responsibility to contract for and oversee repairs for Fearless was the responsibility of Plaintiff; it was only responsible for paying for the repairs.

Ultimately, the disputes between the parties regarding responsibility for the repairs of this unlucky yacht and a new issue—whether she needed a captain on board during her repairs—led Defendant to cancel the insurance policy on 6 September 2013, while Fearless was still sitting in Rybovich's yard waiting to be repaired. However, Defendant acknowledged that it would remain responsible for the cost of the repairs associated with the 3 January 2013 rock encounter and the 13 April 2013 rudder incident. Eventually, Plaintiff moved Fearless to Cracker Boy shipyard and completed the repairs towards the end of 2013.

We include the next portion of Fearless' tale because it is the story that the jury considered in deciding the issues that bear on this appeal. While Fearless had

at least one uneventful voyage after the repairs were complete, it was not long until she has another unfortunate encounter. In October of 2014, the unlucky Fearless was docked near New Brunswick, Georgia, when she was struck by lightning and again suffered substantial damage. Only a few days before this lightning strike, Plaintiff had executed a new insurance policy for Fearless with a separate insurance company, Great Lakes Reinsurance ("Great Lakes"). After the lightning strike, Fearless motored to Savannah, Georgia, where she again underwent repairs, primarily to the electrical systems. The repairs for these damages were not completed until early 2016. Great Lakes paid for most of the damages associated with this lightning strike.

While Fearless was being repaired after the lightning strike, Plaintiff filed this suit against Defendant in Mecklenburg County Superior Court for a single cause of action, breach of contract. The original suit was based upon failure to pay the full value of the insured loss for the damage associated with the 3 January 2013 rock encounter.

When the repairs from the lightning strike were complete, Fearless embarked on her final fateful voyage. In the early morning of 9 March 2016, she set sail from Georgia and headed to Charleston, South Carolina. Early that afternoon, Fearless began taking on water. The captain, Scott Sale, dropped anchor and called for Coast Guard assistance. The Coast Guard worked diligently into the night with Captain Sale attempting to reverse the influx of water and save Fearless. In the early

morning hours, after all electronics on Fearless had failed and her interior was knee-deep with water that had a film of acid floating on it, the Coast Guard finally ordered the captain and his mate off poor Fearless. Fearless eventually sank into the Intracoastal Waterway. She was later found several nautical miles from where she was anchored with her massive keel missing.

After the 2016 demise of Fearless, Great Lakes filed a claim against Plaintiff in Federal Court, Western District of North Carolina, regarding Plaintiff's insurance claim for the total loss of Fearless; Plaintiff made a counterclaim for breach of contract, bad faith, and UDTP against Great Lakes on 4 August 2016. In Plaintiff's counterclaim with Great Lakes, it asserted that the total loss of Fearless was because she ran aground on 9 March 2016, and not because of the earlier damage from 2013. In its brief for that suit, Plaintiff said "the Coast Guard noticed Fearless 'bounce' as if striking bottom." Further, Plaintiff stated that in February 2016, after the repairs on Fearless were completed, it conducted a sea trial to ensure her seaworthiness and Fearless successfully completed the sea trial without any evidence of damage or residual effects of the *January 2013 incident*.

On 30 August 2017, Plaintiff amended its complaint in this action to add a cause of action for negligence, alleging that Defendant had breached its duty to ensure that all repairs were properly performed, and the vessel was seaworthy. Defendant filed an answer to the amended complaint on 20 November 2017. The trial

court stayed the action in this claim on 30 January 2018, pending the resolution of the federal case with Great Lakes.

Almost two years later, on 5 September 2019, Plaintiff moved the court for a motion to amend the previously amended complaint under Rule 15 of the North Carolina Rules of Civil Procedure to add claims for common law bad faith and UDTP; Defendant opposed the motion. Superior Court Judge Louis Trosch held a hearing on the motion. During the hearing, Judge Trosch stated that the strongest argument to deny the motion to amend was futility. The transcript of the hearing does not include any analysis of whether the amendment would relate back per Rule 15(c) of the North Carolina Rules of Civil Procedure. Since the parties disputed whether the claim was controlled by maritime law or North Carolina law, Judge Trosch indicated that it was not clearly evident if the amendment would be futile. Judge Trosch allowed the amendment, while noting that if the amendment was futile, the issue could be addressed at the motion to dismiss stage or at summary judgment. Additionally, in the written order, Judge Trosch stated the finding was based upon the liberal standard of Rule 15(a) of the North Carolina Rules of Civil Procedure. The written order did not address the relation back issue found in Rule 15(c).

Plaintiff filed their second amended complaint on 22 October 2019. Defendant filed its answer to this amended complaint on 20 December 2019. In the response, Defendant included twenty-seven affirmative defenses, including statute of limitations and terms of the policy.

Over a year later, in February and March 2021, both parties moved for summary judgment. In its motion for partial summary judgment, Defendant argued that the claims for common law bad faith and UDTP were untimely. Additionally, Defendant argued that if the claims were timely, the court should still grant summary judgment because the claims are not valid under maritime law. In its response, Plaintiff argued that its original complaint gave sufficient notice of the events or transactions which produced the claims of common law bad faith and UDTP; therefore, the amended complaint should relate back to the date of the original complaint making the claims timely.

On 26 March 2021, Superior Court Judge Eric Levinson[1] held a virtual hearing on the motions for summary judgement; however, there is no transcript of this hearing in the record. Judge Levinson granted partial summary judgment in favor of Defendant finding that the original pleadings did not give notice of the transactions, occurrences, or series of transactions or occurrences to be proven in the amended pleading. Therefore, the bad faith and UDTP claims did not relate back under Rule 15(c) of the North Carolina Rules of Civil Procedure and were untimely. In that order, filed 27 May 2021, Judge Levinson indicated that the parties agree that Judge Trosch did not rule on "whether UDTPA and bad faith claims would 'relate back' under Rule 15 of the N.C. Rules of Civil Procedure notwithstanding that

---

[1] The Honorable Judge Eric L Levinson was designated to oversee the rest of this case under Rule 2.1 of the General Rules of Practice for Superior and District Courts on 3 December 2020.

[c]ourt's permission to amend the complaint to add the extra-contractual claims." Judge Levinson did not address the additional grounds regarding the conflicts of law issues or otherwise make any rulings implicating Judge Trosch's Rule15(a) order.

On 10 June 2021, Plaintiff moved for reconsideration of the order arguing that when Judge Trosch granted the motion to amend, he had ruled that the bad faith and UDTP claims relate back under Rule 15(c). Judge Levinson denied the motion for reconsideration on 7 July 2021. Plaintiff timely noticed appeal on this issue on 27 July 2021 and then filed an unopposed motion to dismiss the appeal without prejudice on 20 December 2021.

The case proceeded to a jury trial on claims of breach of contract and negligence as to whether Plaintiff was entitled to coverage from Defendant under its 2013 Policy for the 2016 sinking of Fearless. The trial judge held a jury charge conference with the parties that lasted from 2 March until 3 March 2022 and included a series of emails and an unrecorded phone conference in the evening on 2 March 2022. During the charge conference, the trial court allowed Defendant to add an affirmative defense, related to a policy exclusion for damage associated with gradual or sudden loss from deterioration, to the jury instructions and the verdict form. Plaintiff then requested that it be allowed to include a jury instruction for equitable estoppel because Defendant should not be allowed to rely on a policy exclusion for deterioration if its independent adjuster knew about the deterioration but did not notify Plaintiff. The trial judge denied that request.

D&B Marine, LLC v. AIG Prop. Cas. Co.

*Opinion of the Court*

At the close of the charge conference, Plaintiff made one objection to the jury instructions. Plaintiff requested a directed verdict on the "anti-concurrent clause exclusion" in the jury charge and on the verdict sheet and objected to the submission of the charge to the jury. The anti-concurrent exclusion clause, stated in Issue 1B on the verdict form, asked the jury to decide if the sinking of Fearless "was also attributable to or resulted directly or indirectly, in whole or in part or in combination with any other cause or causes, from deterioration or rot of the balsa core in the hull of S/V Fearless." Plaintiff argued that Defendant was equitably estopped from asserting this contract exclusion because any deterioration was caused by the misrepresentations of Defendant's independent contractor when they did not notify Plaintiff of the moist balsa in the hull. Neither party objected to the jury instructions after they were given.

Issue 1A on the jury form asked the jury: "Was the total loss of the S/V Fearless on or about March 9, 2016, caused by an 'occurrence' as that term is defined in the defendant's insurance policy?" The jury answered no to this question.[2] The form instructed the jury not to answer any remaining questions if they answered no on the first issue. The trial court entered a judgment based upon this jury verdict on 23 March 2022.

---

[2] Because this jury found that the sinking was not caused by one of the 2013 occurrences and there was no decision in the earlier suit on whether she ran aground in 2016, the ultimate cause of Fearless' demise will forever remain a mystery.

Plaintiff properly noticed appeal on 22 April 2022 from that judgment.

## II.   Analysis

Plaintiff appeals Judge Levinson's grant of partial summary judgment that Plaintiff's claims for bad faith and UDTP were untimely.   Additionally, Plaintiff assigns two errors to the jury instructions.   First, Plaintiff argues that the trial court erred when it denied Plaintiff's request for an equitable estoppel instruction after it allowed Defendant to include a specific policy exclusion in the jury instructions and verdict form.   Second, Plaintiff argues that the trial court erred when instructing the jury that the sinking of Fearless had to be, according to Plaintiff's telling, a new occurrence rather than the result of one of the two admitted occurrences that happened during the policy term.

## A. Partial Summary Judgment

First, Plaintiff argues that Superior Court Judge Levinson erred when he granted a partial summary judgment in favor of Defendant on the issues of common law bad faith and UDTP when another Superior Court judge had granted Plaintiff's Motion for Leave to Amend their pleading to add these claims.   We disagree.

### 1. *Standard of Review*

The parties present conflicting standards of review for this issue.   Plaintiff asks this Court to consider whether the trial court abused its discretion when Judge Levinson held that the amendment allowed by Judge Trosch did not "relate back" to the original amended pleading.   See *Calloway v. Motor Co.*, 281 N.C. 496, 501, 189

S.E.2d 484, 488 (1972) (noting the standard of review for motions to amend is abuse of discretion).

Defendant argues that this Court should review the summary judgment order by Judge Levinson *de novo*. See *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (noting the standard of review for summary judgment is *de novo*).

Judge Trosch's order on 28 October 2019 was silent on the issue of whether the new claims of common law bad faith and UDTP would "relate back" to the amended complaint under Rule 15(c) of the North Carolina Rules of Civil Procedure. Further, in the order granting partial summary judgment, Judge Levinson clearly stated that the parties agree that Judge Trosch did not rule whether the bad faith and UDTP claims would "relate back" under Rule 15(c).[3] Therefore, because Judge Trosch did not resolve the issue, both parties conceded as much, and the ruling actually appealed is Judge Levinson's grant of partial summary judgment, we apply *de novo* review to that order.

### 2. *Analysis*

The well-established rule in North Carolina is that no appeal lies from one Superior Court judge to another; and that ordinarily, one judge may not modify, overrule, or change the judgment that another Superior Court judge previously made

---

[3] In their motion for reconsideration, Plaintiff denies agreeing that Judge Trosch did not rule on the issue of whether the amendment related back but there is no transcript of that hearing in the record.

in the same action. *Calloway*, 281 N.C. at 501, 189 S.E.2d at 488. However, modifications or changes to an interlocutory order, such as an order granting pleading amendment, are proper where (1) the order is discretionary and (2) there has been a change of circumstances. *Stone v. Martin*, 69 N.C. App. 650, 652, 318 S.E.2d 108, 110 (1984). This rule, known as the *Calloway* rule, protects the integrity of the court system, and we, therefore, consider the circumstances in the matter carefully so as not to disturb the integrity of this rule. *State v. Woolridge*, 357 N.C. 544, 549-50, 592 S.E.2d 191, 194 (2003).

Plaintiff argues that this Court should apply the *Calloway* rule to protect Judge Trosch's ruling, which allowed the amendment, from Judge Levinson's summary judgment ruling that dismissed the claims added by the amendment. In this appeal, Plaintiff argues that because Judge Trosch granted the motion to amend, the amendment "automatically" relates back based upon the use of the word "deemed" in the language of Rule 15(c). N.C. R. Civ. P. 15(c) (2022). However, the plain language of the statute and the case law, do not support the argument that the amendment automatically relates back. Further, in this case, we hold that the *Calloway* rule is not applicable because Plaintiff waived a *Calloway* analysis by encouraging Judge Trosch to grant the motion to amend its pleading while reserving resolution regarding the validity of the new claim for a later hearing and then inviting Judge Levinson to consider the issue of relation back.

In a Request for Motion to Amend under Rule 15(a), judges construe the rule liberally to allow amendments where the opposing party will not be materially prejudiced. *Delta Env. Consultants of N.C. v. Wysong & Miles Co.*, 132 N.C. App. 160, 165, 510 S.E.2d 690, 694 (1999). This Court has determined that the proper reasons for denying a motion to amend include undue delay by the moving party, unfair prejudice to the nonmoving party, bad faith, futility of amendment, and repeated failure to cure defects by previous amendment. *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 45, 626 S.E.2d 315, 325 (2006).

Separately, under Rule 15(c), a claim asserted in an amended pleading is *deemed* to have been interposed at the time the claim in the original pleading was interposed, *unless* the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading. N.C. R. Civ. P. 15(c) (2022) (*emphasis added*). Whether an amended complaint will relate back to the original complaint does not depend upon whether it states a new cause of action but instead upon whether the original pleading gave defendants sufficient notice of the proposed amended claim. *Bowlin v. Duke University*, 119 N.C. App. 178, 184, 457 S.E.2d 757, 761 (1995). This Court has held that a motion to amend is not deemed to have been interposed at the time of the original pleading if the original pleading does not give notice of the transaction, occurrences, or series of transactions, to be proved pursuant to the amended pleading.

*State Farm Fire & Cas. Co. v. Darsie*, 161 N.C. App. 542, 546, 589 S.E.2d 391, 395-96 (2003).

At the Motion to Amend hearing, the parties agreed that undue delay, bad faith, and repeated failure to cure defects did not apply to the facts of the proposed amendment. Defendant argued that allowing the amendment would be unfairly prejudicial because the case had been stayed for such a long time. Judge Trosch did not find that allowing the amendment would be unduly prejudicial because both parties agreed to the stay. Defendant also argued that the amendment was futile because Plaintiff was applying the wrong law to the case. Plaintiff argued that per *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, the regulation of marine insurance belongs to the States; therefore, its claims for common law bad faith and UDTP, which flow from the breach of contract claim for the 3 January 2013 occurrence, are allowed by North Carolina state law. 348 U.S. 310, 321, 99 L. Ed. 337, 346 (1955). Conversely, Defendant argued that per *Wilburn Boat Co.*, state law only applies to maritime insurance contracts in the absence of an applicable federal admiralty law; since a claim for UDTP conflicts with admiralty law, it is prohibited. *Id.* at 320, 99 L. Ed. at 346; *See also Delta Marine, Inc., v. Whaley,* 813 F. Supp. 414, 417 (E.D.N.C. 1993) (dismissing a claim under the North Carolina UDTPA because it conflicts with requirements for awarding punitive damage under admiralty law). Further, Defendant argued that the standard for bad faith in North Carolina is lower than the punitive threshold under admiralty law, so the bad faith claim similarly

fails. While Plaintiff argued that its amendment would not be futile, it proposed that the issues "may be best for a 12(b)(6) hearing where we can have a full lecture on admiralty law versus state law." Without resolving the conflicts of law issue, Judge Trosch stated that it was not clearly evident whether the amendment would be futile.

The transcript of the motion to amend hearing does not include any discussion of whether the original (amended) complaint dated 24 August 2017, which only included claims for breach of contract and negligence, gave notice of the transaction, occurrences, or series of transaction or occurrences, to be proved in the second amended complaint which included additional claims for bad faith and UDTP based upon the sinking of Fearless. Additionally, North Carolina Rules of Civil Procedure 9(b) and (k) establish special pleading requirements for fraud and punitive damages. This Court has held that when a claim requires unique factual allegations, those allegations must be present in the original complaint to meet the requirements of Rule 15(c) so that the amended complaint relates back to the original complaint. *State Farm Fire & Cas. Co.*, 161 N.C. App. at 546, 589 S.E.2d at 395.

The record is clear that at the close of the Motion to Amend hearing, Judge Trosch left open issues for resolution in future hearings; it is not clear from the transcript that the parties even argued the issue of whether the amendment would relate back to the amended complaint dated 24 August 2017. Additionally, in his written order allowing the amendment, Judge Trosch specifically stated he was "appl[ying] the liberal standard of Rule 15*(a)*." (emphasis added)  Therefore, the

record related to the Motion to Amend hearing supports the conclusion that Judge Trosch did not make a finding on whether the new claims relate back to the original claims under Rule 15(c).

Seventeen months later, both parties made motions for summary judgment. Defendant requested the trial court grant summary judgment for the claims of UDTP and bad faith on two grounds. First, the claims were untimely under the applicable statute of limitations. Second, the claims conflicted with substantive admiralty law.

At no point in the briefing for summary judgment did Plaintiff allege that the issue of whether the amendment related back had been previously decided by Judge Trosch, nor did Plaintiff argue that the *Calloway* rule was applicable. In fact, in its responsive brief, Plaintiff invited Judge Levinson to consider the issue of relation back.

> Applying this standard, the [c]ourt can determine whether the claims asserted by D&B Marine in its [Second] Amended Complaint relate back to the date it filed its Original [Amended] Complaint by a comparison of the allegations in each of the Complaints.

Plaintiff then goes on to compare its original (amended) complaint and its second amended complaint to demonstrate that the original complaint gave notice of the events or transactions which produced the claim to enable Defendant to understand its nature and basis as required to establish relation back. *Pyco Supply Co. v. American Centennial Ins. Co.*, 321 N.C. 435, 442, 364 S.E.2d 380, 384 (1988). (observing under the notice theory of pleading, a statement of a claim is adequate if

it gives sufficient notice of the events or transaction which produced the claim to enable the adverse party to understand the nature and basis and to file a responsive pleading).

Further, while the record does not include a transcript of the summary judgment hearing, in his summary judgment order, Judge Levinson stated:

> the parties agree that Superior Court Judge Louis Trosch did not rule on whether the UDTPA and bad faith claims would "relate back" under Rule 15 of the N.C. Rules of Civil Procedure notwithstanding the [c]ourt's permission to amend the complaint to add extra contractual claims – and the parties agree this legal issue is before this [c]ourt.

Based upon the briefs and the hearing, Judge Levinson granted Defendant's motion for partial summary judgment, finding that the original pleadings did not give notice of the transactions, occurrences, or series of transactions or occurrences to be proved pursuant to the amended pleadings.

After this ruling, in the motion for reconsideration of summary judgment and in this appeal, Plaintiff impermissibly "switched horses" and argued that the act of granting the motion to amend "automatically" causes the amendment to relate back because of the word "deemed" in Rule 15(c). *Jacobs v. Physicians Weight Loss Ctr. of Am., Inc.*, 173 N.C. App. 663, 678, 620 S.E.2d 232, 242 (2005) ("It is axiomatic with us that a litigant must be heard here on the theory of the trial below and he will not be permitted to switch horses on his appeal." (quoting *Graham v. Wall*, 220 N.C. 84, 94, 16 S.E.2d 691, 697 (1941))). The argument that granting a motion to amend

D&B Marine, LLC v. AIG Prop. Cas. Co.

*Opinion of the Court*

"automatically" causes an amendment to relate back does not align with the clear language of the statute or the case law. In Rule 15(c), the language includes a subordinate clause beginning with the word "unless" which limits the universe of scenarios where an amendment will relate back. N.C. R. Civ. P. 15 (2022). An amendment cannot "automatically" relate back when there are scenarios under which the amendment does not relate back. This Court has identified circumstances where an amendment does not relate back to the original complaint, including where the original complaint did not include the specialized pleading requirements for claims in the amended complaint. *See State Farm Fire & Cas. Co.*, 161 N.C. App. at 589, S.E.2d at 395.

The *Calloway* rule represents an important principle in maintaining respect for the rule of law, and reducing gamesmanship in litigation; for these reasons, we will not do anything to disrupt or undermine the rule. Here, however, Plaintiff appears to be engaging in the very gamesmanship that the rule was intended to avoid. Because Plaintiff encouraged Judge Trosch to grant the motion to amend without resolving all issues related to the validity of the amendment and invited Judge Levinson to consider the issue of relation back at summary judgment, we find that the issue was properly in front of Judge Levinson at the summary judgment hearing. The *Calloway* rule is inapplicable.

We therefore affirm Judge Levinson's grant of partial summary judgment.

**B. Jury Instructions on Equitable Estoppel**

Next, Plaintiff argues that the trial court made a reversible error when it refused Plaintiff's request for an instruction on equitable estoppel after allowing Defendant to include the affirmative defense of a specific policy exclusion in the jury instructions and verdict form related to damages from rot and deterioration. We disagree, holding there was no error, and noting that even if it were an error, Plaintiff failed to show prejudice.

### 1. *Standard of Review*

For an appeal of jury instructions, this Court considers the jury charge contextually, in its entirety, and the party asserting the error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction. *Hammel v. USF Dugan, Inc.*, 178 N.C. App. 344, 347, 631 S.E.2d 174, 177 (2006) A specific jury instruction should be given when: "(1) the requested instruction was a correct statement of law and (2) was supported by the evidence, and that (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested and (4) such failure likely misled the jury." *Outlaw v. Johnson*, 190 N.C. App. 233, 243, 660 S.E.2d 550, 559 (2008). Failure to give a requested and appropriate jury instruction is a reversible error if the requesting party is prejudiced as a result of the omission. *Id.*

### 2. *Analysis*

On appeal, Plaintiff argues that trial court had a "nondiscretionary duty" to provide a jury instruction on equitable estoppel after it allowed Defendant to include

the affirmative defense[4] of a policy exclusion regarding responsibility for damages associated with deterioration on the verdict form. However, a jury instruction for equitable estoppel on an insurance policy exclusion does not align with North Carolina case law. Further, because the jury never reached the issue of whether the insurance policy exclusion applied to the facts of this case, Plaintiff cannot demonstrate that the denial of the jury instruction resulted in prejudice.

Our Supreme Court has established that the doctrines of waiver and estoppel are not available to bring within the coverage of a policy risks that are not covered by its terms or risks expressly excluded. *See Hunter v. Insurance Co.*, 241 N.C. 593, 595-96, 86 S.E.2d 78, 80 (1955) (holding estoppel can have a field of operation only when the subject matter is within the terms of the contract but cannot radically change the terms of the policy).

Here, Plaintiff requested a jury instruction that equitable estoppel would preclude Defendant from using an insurance policy exclusion to expand the coverage of the insurance policy to include rot and deterioration because Defendant's representative did not notify Plaintiff of the moist balsa in the hull during the repairs to the 2013 damage. The policy that Plaintiff and Defendant executed stated:

> There shall be no insurance under Part III – Property
> Coverage for any loss, damage, claim or expense
> attributable to or resulting directly or indirectly, in whole

---

[4] Plaintiff refers to this as an unpled affirmative defense, however Defendant's answer includes an affirmative defense of terms of the policy.

> or in part or in combination with any other cause or causes from:
> - Gradual or Sudden Loss
>
>    Osmosis, blistering, fiberglass or surface coat blistering, electrolysis, delamination, rust, corrosion or oxidation, marine life, marine borers, moth or vermin, rot, fungi, mold or infestation, warping or shrinkage, change of temperature or humidity, deterioration, lack of maintenance, wear and tear or inherent vice.

The policy clearly excluded damages due to rot, deterioration, and delamination from the scope of the policy; therefore, Plaintiff cannot use equitable estoppel to bring that within the scope of the policy. For that reason, the jury instruction on equitable estoppel would not be a correct statement of the law, and the trial court did not err when it denied the request to include a jury instruction on equitable estoppel.

Assuming, *arguendo*, that the refusal to give the equitable estoppel instruction was error, Plaintiff has failed to show that the refusal resulted in prejudice. The requested equitable estoppel instruction applied to whether the policy exclusion for rot and deterioration was applicable to the facts of the case, which was part of issue 1B on the jury verdict form. Since the jury concluded in issue 1A that the loss of Fearless was not caused by an "occurrence" as the term was defined in the insurance policy, the verdict form directed them not to reach a conclusion on any remaining issues. Because the jury did not consider issue 1B, Plaintiff cannot demonstrate that the requested instruction would result in a different outcome in the trial.

Accordingly, we affirm the trial court ruling.

## C. Jury Instruction on "occurrence"

Plaintiff's final argument is that the trial court erred in instructing the jury and on the verdict form that the sinking of Fearless had to result from a new "occurrence" instead of the result of one of the two covered occurrences that happened during the policy term. However, Plaintiff did not object to any specific language at the close of the jury conference regarding the term "occurrence" nor did they object to the jury charge after the jury instructions were concluded.

Rule 10(a)(2) of the North Carolina Rules of Appellate Procedure specifically address challenges to jury instructions and provides that:

> A party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict, *stating distinctly that to which objection is made and the grounds of the objection*; provided that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury.

N.C. R. App. P. 10(a)(2) (2022) (emphasis added). Where a portion of the charge is challenged, it must be identified in the record on appeal by clear means of reference. *Durham v. Quincy Mutual Fire Ins. Co.*, 311 N.C. 361, 367, 317 S.E.2d 372, 377 (1984).

Here, the record reveals that the trial court provided the parties with the opportunity to make objections to the jury instructions at the close of the charge conference and after the jury instructions were delivered. The record is clear that

both parties voiced disagreement with the decisions of the trial court during this charge conference. However, at the conclusion of the charge conference, only one objection was placed on the record.

> [PLAINTIFF'S COUNSEL]: Plaintiff D&B Marine moves for a directed verdict on the anti-concurrent clause exclusion, which is in the jury charge and the verdict as Issue 1B. There is no evidence and [Defendant] is relying upon its own breach of its contractual policy to invoke this exclusion. Therefore, on behalf of [P]laintiff D&B Marine, we object to the submission of this charge to the jury.

This objection does not state that it applies to the language around the term "occurrence." Neither party made an objection on the record after the Judge read the instructions to the jury. Further, we find no other support for Plaintiff's argument that this matter is preserved for appeal in Plaintiff's briefing. Accordingly, we dismiss this issue.

Assuming *arguendo* that the issue was preserved, Plaintiff does not cite to specific language in the jury charge or on the jury verdict form that was in error. In its brief, Plaintiff failed to provide a standard of review for this issue as required in North Carolina Rules of Appellate Procedure. N.C. R. App. P 28(b)(6) (2022). Additionally, Plaintiff failed to provide a citation of any authorities upon which they are relying for the argument as required in Rule 28. *Id.* Issues where there is no reason or argument stated will be taken as abandoned. *Id.* Under our appellate rules, it is the duty of the appellant to provide sufficient legal authority to this Court

and failure to do so will result in dismissal. *Zhu v. Deng*, 250 N.C. App. 803, 810 794 S.E.2d 808, 814 (2016)

The jury charge included the definition of "occurrence" as defined by the insurance policy executed by the parties. The verdict form asks the jury if the total loss of Fearless was caused by an occurrence as defined in the insurance policy. There is no reference to a "new occurrence" in the jury charge or on the jury form. Plaintiff's brief contains conclusory statements that the jury could not find that the sinking was not covered because Defendant had paid for the repairs associated with covered damages. However, Plaintiff fails to provide reasoning or authorities to support this conclusion. It is not the duty of the Court to peruse the record, to construct an argument for the appellant. *Person Earth Movers, Inc. v. Thomas*, 182 N.C. App. 329, 333, 641 S.E.2d 751, 754 (2007).

Accordingly, we note that if the issue was preserved, we dismiss the issue because it was not adequately briefed.

### III.    Conclusion

After a detailed review of the issues presented by both parties, we affirm the grant of partial summary judgment by Judge Levinson. Further, we affirm the trial court's ruling on the jury instruction for equitable estoppel. Finally, we dismiss the issue on the jury instruction for "occurrence" because it was not properly preserved for appeal.

AFFIRMED IN PART; DISMISSED IN PART.

Judges GORE and STADING concur.